[S. F. No. 7335.   Department Two.—June 14, 1917.]

## TRISTAM W. SHELDON, Appellant, v. L. L. JAMES, Respondent.

NEGLIGENCE—INJURIES TO PEDESTRIAN ON CITY STREET—COLLISION WITH AUTOMOBILE BACKING INTO PARKING AREA—VIOLATION OF ORDINANCE—INSTRUCTION.—In an action for personal injuries received by a pedestrian on a city street from being struck by an automobile while the car was being backed into a vacant space along the curb, an instruction predicated upon an ordinance that every vehicle shall travel on the right side of the street and near the right-hand curb thereof is properly refused, since such ordinance is to be reasonably construed, and its terms have no reference to the right of chauffeurs, in congested districts of the city where the parking area is limited, to back their automobiles in such limited space.

ID.—BACKING OF AUTOMOBILE—FAILURE TO LOOK—INSTRUCTION.—An instruction that if the person in charge of the car in backing the same toward the curb did not look in that direction to ascertain if anyone was traveling upon or crossing the street, in the immediate vicinity, and in consequence ran into and injured a pedestrian, the defendant was guilty of negligence, is unimpeachable.

ID.—BACKING OF CAR—INABILITY TO SEE—WHEN NOT NEGLIGENCE.—A chauffeur cannot be charged with negligence in backing his car from the mere fact that he could not see over the back thereof, if he took reasonable precautions by looking backward to the right and left or by standing up and looking.

ID.—CROSSING OF STREET—DUTY OF PEDESTRIAN.—A greater degree of care is necessary upon the part of a pedestrian who undertakes to cross a congested highway other than at the established crosswalk, especially if he pursues a long diagonal route.

ID.—NEGLIGENCE OF PLAINTIFF—SUFFICIENCY OF EVIDENCE.—In such an action a finding of negligence on the part of plaintiff is justified by evidence that the backing automobile made a loud noise sufficient to attract attention of people upon the opposite side of the street, and as such should have attracted the attention of the plaintiff before he put himself in a place of danger.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.   John Hunt, Judge.

The facts are stated in the opinion of the court.

H. L. Clayberg, and Clayberg & Whitmore, for Appellant.

Walter H. Linforth, for Respondent.

HENSHAW, J.—This appeal is from the judgment and from the order denying plaintiff's motion for a new trial. The cause was tried before a jury, which gave its verdict for defendant. The action was to recover damages for personal injuries. The facts and circumstances are the following: Powell Street runs northerly and southerly in the city and county of San Francisco. It is crossed to the north by Geary Street and to the south by O'Farrell Street. Plaintiff's office was in the Elkan Gunst Building, situated at the southwest corner of Geary and Powell Streets. Plaintiff had eaten his lunch in a building at the northeast corner of O'Farrell and Powell Streets, across Powell Street and a block southerly from his office. He was late in keeping an appointment at his office at 1 o'clock of the afternoon and so hurried back by a short cut. Thus he did not cross to the westerly side of Powell Street by the cross-walk established for pedestrians at its junction with O'Farrell, nor yet did he walk along the east side of Powell Street to the cross-walk for pedestrians at its junction with Geary Street. To the contrary, he stepped into Powell Street a short distance from the corner of O'Farrell and proceeded to cross Powell Street at an acute angle and by a long diagonal. In so doing it is contended that he used all due care and was in the normal possession of all his faculties. Defendant's automobile, of the touring type, with hood lowered and projecting beyond the tonneau, had proceeded down or southerly on Powell Street from Geary to about the middle of the block, where, in front of the Manx Hotel, situated on the west side, an occupant of the automobile alighted. The chauffeur was left alone in the car. It was his duty to await the return of the occupant. There was vacant space along the curb immediately to the rear of the place where the automobile had stopped and the chauffeur proceeded to back his car into this space. While so doing, plaintiff hurrying to his office and neither seeing nor hearing nor knowing of the presence of the backing automobile, was struck by the projecting hood and thrown down, sustaining the injuries complained of. It was a little after midday, the street carried a heavy traffic, and automobiles were parked along all of the

west side of Powell Street saving at the one available place
which the chauffeur sought to occupy. Powell Street de-
scends sharply toward the south, and the grade up which the
chauffeur was thus backing his car was from seven to ten per
cent.

The foregoing sufficiently presents the facts necessary to an
understanding of the complaints which appellant makes on
this appeal. These complaints are directed to the instruc-
tions given and refused. Such other facts as may become
pertinent to an understanding of the instructions will be pre-
sented as called for.

The court refused to instruct the jury as requested by
plaintiff that if it found from the evidence that defendant's
auto was driven "backward in a northerly direction on the
west side of Powell Street, etc., you may find defendant guilty
of negligence from this fact alone." This instruction is
predicated upon an ordinance of the city of San Francisco
that every vehicle upon the streets of San Francisco shall
travel on the right side of such streets and near the right-
hand curb thereof. The instruction was properly refused.
The ordinance is to be reasonably construed. Its terms have
no reference to the right of chauffeurs, in congested districts
of the city where the parking area is limited and the vacant
spaces in that area even more limited, to back their auto-
mobiles into such a limited space, and it requires little knowl-
edge of the operation of such vehicles to know that such back-
ing is in many instances the only method by which the machine
can be worked into the space and up to the curb of the street.
Another section of this ordinance which is relied on declares
it shall be unlawful to propel "any vehicle in a backward
direction, if, by so doing, the free and uninterrupted passage
of any vehicle or any street-car or interurban car shall be im-
peded." This has absolutely no relevancy to the evidence and
issues in this case, and could not, therefore, have been made
with propriety the basis of any instruction.

The court modified certain instructions proposed by plain-
tiff and gave them in modified form. As modified the in-
structions were unimpeachable, they being in the following
language:

"In determining whether the defendant's chauffeur was
guilty of negligence resulting in plaintiff's injury, you should
consider all the facts of the case—the direction in which the

car was traveling, the rate of speed it traveled, whether the chauffeur gave any signal or warning before turning, or while traveling backward, the condition of the street, the situation and surroundings of the parties, the manner in which plaintiff was crossing the street, and what observation, if any, the chauffeur made while backing his car.

"If the jury find from the evidence that the person in charge of defendant's automobile was driving the same backward in a northerly direction on the west side of Powell Street, and did not look in the direction that said auto was running to ascertain if anyone was traveling upon, or crossing said street in his immediate vicinity, and, in consequence, ran into, and injured the plaintiff, then the defendant was guilty of negligence."

The court was justified in refusing to give the instructions except in the modified form, the first, because it predicated negligence, as did the instruction which we first considered, solely upon the backing of the automobile. Also, it charged the jury specifically to find the defendant guilty of negligence if the chauffeur gave no signals or warning before starting backward and while going backward, and yet it is too plain to need discussion that unless plaintiff was injured because of the absence of such signals, such negligence, even if it were proved, would not have been the contributing cause of his injury and the jury's verdict could not have been founded upon it; and the second, because it directs the jury to find that defendant's chauffeur was negligent if he backed his car when "he could not see over the back of said auto," yet the mere fact that the chauffeur could not see over the back of the automobile while sitting would not in and of itself convict him of negligence in the backing of his car if he took reasonable precautions before so doing by looking backward to the right and left, or by standing up and so looking over the back of his car.

The court instructed the jury at the request of the defendant as follows: "Ordinary care, or its opposite, neglect, are not absolute terms, but they have reference to times, places and circumstances, and where a plaintiff is a foot passenger, crossing a street where vehicles are numerous, it is his duty to look both ways, and the same duty was imposed on defendant's driver in driving the car backward."

The complaint which appellant makes of this instruction is that it contains the unjustifiable declaration as a matter of law that it is the duty of a pedestrian in crossing a street to look both ways; that this duty is imposed upon the pedestrian when about to cross a street (*Niosi* v. *Empire Laundry Co.,* 117 Cal. 257, [49 Pac. 185]), and that no such duty is incumbent on him when actually on the thoroughfare. Further, appellant construes the instruction as asserting that "looking both ways" means looking backward as well as forward, and that such is distinctly not the rule of law as evidenced by cases like *Raymond* v. *Hill,* 168 Cal. 473, [143 Pac. 743]. It is not overstating it to say that in the present day in the city of San Francisco vehicular traffic by automobiles is a hundred times as great as that by horse-drawn vehicles. Automobiles have ceased to be the mere playthings of the rich. They have become a part, and well nigh an essential part, of the business life of a city. They make greatly for expedition in the transaction of business and in the accomplishment of this attain a speed far beyond that of horse-drawn vehicles. Business has adjusted itself to this new mode of transportation and would be as little inclined to abandon it as it would be to abandon the telephone. Municipal authorities have, and properly have, recognized the necessity of regulatory provisions controlling automobile traffic for the safety of pedestrians upon the one hand, and at the same time, to the end that the traffic may not be unduly interfered with, have adopted regulatory provisions controlling the movements of pedestrians. The most familiar of these provisions is the one checking automobiles or bringing them to a full stop as they draw up to intersecting streets in the congested portions of the city, and here police officers are frequently stationed to regulate the traffic. It then becomes a necessity for the orderly and expeditious movement of this traffic in such congested districts that automobiles should be allowed to move at reasonable speed between intersecting streets. In many municipalities this is declared in terms without an express limitation upon that speed. In others, to the end that such movements may not be unduly impeded and interfered with, the right of crossing streets by pedestrians is limited to the established cross-walks. No such ordinance has yet been passed in the city of San Francisco, or at least we have not been advised of its passage, but aside from the existence of

such an ordinance it is palpably true that in the exercise of the due care for one's own protection which the law exacts of everybody, a greater degree of care is necessary upon the part of the pedestrian who undertakes to cross a congested highway other than at the established cross-walk, and especially so, if in the act he does not essay a direct crossing but pursues a long diagonal route. It is true that in so crossing the care required of this pedestrian was especially directed to the observation of vehicles going north on the easterly side of Powell Street and south on the westerly side, but upon neither side of the street was he relieved from the duty of exercising ordinary care to protect himself against automobiles which might, as they had a perfect right to do, be backing into a vacant parking stand. The observation of ordinary care by such a pedestrian is not fully performed by merely looking to the left or right as he steps upon the street. The observance of that care is imperative upon him during all of the time that he is crossing. (*Scott* v. *San Bernardino etc. Co.*, 152 Cal. 604, [93 Pac. 677].) Here it is in evidence from plaintiff's own witnesses that the automobile in backing up the grade made an extremely loud and raucous noise sufficient to attract the attention of people upon the opposite side of the street, and such as should have attracted the attention of the plaintiff before he put himself in a place of danger. If, then, under these circumstances he did not look, the jury was justified in concluding that he was negligent in not having looked. We do not construe the instruction given as meaning that it is the duty of a pedestrian to look backward, nor yet as an effort to standardize the law by declaring that a pedestrian must constantly and continuously be looking from right to left. We construe it to be no more than a declaration that in the exercise of ordinary care it is the duty of such a pedestrian to look to the right and to the left whenever he has voluntarily put himself in a position which may be one of peril coming from either direction, and in particular where he has received adequate warning of the likelihood of peril. The final objection to this instruction, namely, that it declares the duty of the pedestrian and the duty of the driver to be the same, and that this is an erroneous statement of the law, is not sustainable. The court was not here attempting an elaboration of the duties of either or of both. It was not attempting to declare that in the exercise of the due care re-

quired of each the *quantum* which would measure up to due care was the same as to each. It was merely stating so far as the chauffeur was concerned the unimpeachable proposition, favorable in its terms to the pedestrian, that it was the duty of the chauffeur to look carefully about, "to look both ways," before backing his car.

The court instructed the jury as follows: "Where the evidence is as consistent with a neglect of duty or care on the part of the injured person as it is with a neglect of duty or care on the part of the person charged with causing the injury, the injured party cannot recover in an action for damages for the injuries sustained."

Appellant founds his objection to this in that it casts the burden of proof upon the plaintiff not only to show the negligence of the defendant but to show his own absence of contributory negligence, and it is said that while this instruction given in the case of *Peterson* v. *Ballantine*, 205 N. Y. 32, [39 L. R. A. (N. S.) 1147, 98 N. E. 202], is a sound declaration of the law, because in the state of New York the burden of proving these things is on the plaintiff, the rule being to the contrary in California touching the burden of proving contributory negligence, the instruction was erroneous. The difficulty with this objection, however, is that the instruction has not the slightest reference to the burden of proof at all, but deals only in general and unimpeachable terms with the weight and effect of evidence.

It is contended that the instructions are inconsistent with each other. It would serve no useful purpose to set forth these asserted contrary instructions at length. So doing would only establish the hyper-technicality and unsoundness of the attack.

Finally, a reversal is sought upon the ground that the court disregarded one of its own rules, which provides that instructions proposed by either party shall be handed to the judge personally and a copy thereof delivered to the adverse party, and that all instructions to the jury shall be settled between court and counsel before argument to the jury begins. Aside from the fact that before appellant can justly ask a reversal upon this ground he must show injury from a nonobservance of the rule, and here shows none, it may be added that the asserted error is not before this court. It cannot arise on the appeal from the judgment, for it is supported by no bill of

exceptions. It cannot arise on the appeal from the order denying the motion for a new trial, as it is not one of the errors or irregularities relied on in support of that motion. Nor can appellant, charged with knowledge of this rule since he here relies upon it, rest his contention upon any surprise, since he must have known before the instructions were given by the court to the jury that they had not been submitted to him.

The judgment and order appealed from are therefore affirmed.

Melvin, J., and Lorigan, J., concurred.