[L. A. No. 6847. In Bank.—March 23, 1923.]

## ADA M. BURGESSER et al., Appellants, v. BULLOCK'S (a Corporation) et al., Respondents.

[1] NEGLIGENCE—USE OF HIGHWAYS—RIGHTS OF PEDESTRIANS AND AUTOMOBILES.—Neither a pedestrian nor an automobile has a superior right of way on a highway; each is entitled to use the highway and the conduct of both must be regulated with reference to this fundamental rule.

[2] ID. — CROSSING STREET — QUESTION OF FACT. — The question of whether or not a pedestrian is negligent in crossing a street is one which, in the absence of express statutes regulating his conduct, must ordinarily be left to the jury, for the conduct of an ordinarily prudent person under such circumstances must be largely determined by the condition of the traffic at the particular time and place in question. There may be circumstances under which it can be said that the pedestrian is negligent as a matter of law.

---

1. Reciprocal duty of operator of automobile and pedestrian to use care, notes, Ann. Cas. 1916E, 661; 51 L. R. A. (N. S.) 990; 9 A. L. R. 1248.

[3] ID.—DIRECTED VERDICT.—In an action for damages for negligence, if there is any substantial evidence of negligence, it is error for the court to direct a verdict; but, on the other hand, the court may withdraw the case from the jury and direct a verdict where the evidence is undisputed, or is of such conclusive character that the court, in the exercise of a sound judicial discretion, would be compelled to set aside a verdict returned in opposition to it. (On rehearing.)

APPEAL from a judgment of the Superior Court of Los Angeles County. Chas. Monroe, Judge. Reversed.

The facts are stated in the opinion of the court.

Norman A. Bailie, Michael F. Shannon and Thomas A. Wood for Appellants.

Haas & Dunnigan, S. F. MacFarlane and Claire Tappaan for Respondents.

WILBUR, C. J.—This is an action by the heirs of John Q. Burgesser, deceased, to recover damages due to his death. The trial court instructed the jury to bring in a verdict for the defendants. Plaintiffs appeal. The question presented on the appeal is whether or not there was sufficient evidence to go to the jury.

The decedent was killed by a collision between himself and an automobile belonging to the defendant Bullock's, a corporation, and operated by defendant Clopton, its employee. The accident occurred November 29, 1919, at the intersection of West Jefferson Street and Budlong Avenue, in the city of Los Angeles. About 6:15 P. M. of that day the deceased alighted from the front end of a west-bound Jefferson Street car, passed around the front end of such car and in front of the headlight of the car, and was walking across Jefferson Street in a southerly direction toward the curb on the south side of Jefferson Street, when he was struck by the defendant's automobile, proceeding easterly on Jefferson Street. The trial court granted the motion for an instructed verdict in favor of the defendants upon the ground that the decedent was negligent as a matter of law. The trial court evidently arrived at this conclusion because of the testimony of the decedent given by deposition in an action to perpetuate his testimony to the effect that he

looked to the left and then to the right toward the defendant's automobile and saw the headlights of the approaching automobile, and continued to observe them while he walked rapidly toward the curb. The opinion of the trial court in granting the motion for the instructed verdict is incorporated in the transcript and it appears that the trial judge was of the opinion that the decedent, having observed the approaching automobile before he entered its path, and having continually observed it thereafter, and having apparently misjudged its speed, was therefore guilty of contributory negligence. The fallacy of the conclusion reached by the trial court results from the assumption that the automobile had the right of way and that it was the duty of the pedestrian to assume that the automobile would continue in its direction without diminishing its speed or yielding to the pedestrian. [1] The law is that neither the pedestrian nor the automobile has a superior right of way, and that each is entitled to use the highway and that the conduct of both must be regulated with reference to this fundamental rule. The decedent testified that when he first saw the defendant's automobile it was about twenty-five feet on the other side of Budlong Avenue and that he had just passed around the front of the street-car and had looked toward the rear of the street-car before starting to cross, and then, looking to his right, saw the headlights of defendant's machine. These lights, he testified, were "low down," apparently meaning that they were dim. He stated it was "very dusk" and he could not see the automobile itself. Whether or not the decedent was negligent in crossing the street in front of the approaching automobile was primarily a question of fact for the jury, and for that reason we do not wish to enter into a further discussion of the matter, for it is sufficient for us to say that the jury might have concluded that the decedent was not negligent in so doing.

This case was transferred to the district court of appeal, second appellate district, division two, and an opinion was rendered by that court affirming the judgment of the trial court. That court, in affirming the judgment, relied upon a rule of law which it stated as follows: "A foot-traveler is negligent who fails to look both ways before crossing a highway where vehicles frequently pass. (*Niosi* v. *Empire Steam Laundry et al.*, 117 Cal. 257 [49 Pac. 185]; *Hamlin*

v. *Pacific Electric Ry. Co.,* 150 Cal. 776 [89 Pac. 1109];
*Spring* v. *Tawa,* 49 Cal. App. 100 [192 Pac. 1051].)'' It
is true that an instruction to that effect was given in the
first case cited, *Niosi* v. *Empire Steam Laundry et al., supra,*
and also in the case of *Sheldon* v. *James,* 175 Cal. 474, 478
[2 A. L. R. 1493, 166 Pac. 8]. The same rule is also stated
in the case of *Davis* v. *Breuner Co.,* 167 Cal. 683 [140 Pac.
586], but these cases must all be read in the light of the
facts involved in the particular case. In the case of *Niosi*
v. *Empire Steam Laundry et al., supra,* the jury had ren-
dered a verdict in the defendant's favor. The plaintiff's
own testimony showed that he stepped into the street inter-
section where the cross-street was about twenty feet wide,
without looking toward the left, from which traffic would
be expected to come on the side of the street he was enter-
ing, and that he was almost instantly struck by the right
hub of the front wheel of the laundry wagon, so that ap-
parently the horses drawing the laundry wagon had passed
him when he stepped into the street and directly into the
side of the wagon. The plaintiff had his attention directed
toward some boys fighting farther up the cross-street to
his right and did not look at all in the direction from which
traffic was to be expected as he stepped from the curb.
The real question, therefore, involved was whether or not
it was the duty of the pedestrian in entering the street to
look toward the direction from which he would expect traf-
fic to approach if it was traveling on the right-hand side of
the street he was about to enter. Under these circumstances
the approval of the trial court's instruction amounted to
no more than an approval of the rule that where a pedes-
trian steps from a curb into a narrow street where the
traffic is heavy, it is his duty to look in the direction from
which such traffic would be likely to come before stepping
from the curb.

In the case of *Davis* v. *Breuner Co.,* 167 Cal. 683 [140 Pac.
586], *supra,* this court was considering the question as to
whether or not there was sufficient evidence to justify the
finding of the trial court that the pedestrian was negligent.
The statement in that case that it was the duty of the foot-
passenger to look both ways before starting to cross the
street in entering a busy thoroughfare was directed to the

propriety of the jury's finding of fact. The jury in that case had found that the pedestrian was negligent.

In the case of *Sheldon* v. *James, supra,* the instruction given in the case of *Niosi* v. *Empire Steam Laundry et al., supra,* was given. A verdict was rendered in favor of the defendant and the plaintiff appealed, claiming that the instruction was erroneous. In passing upon that instruction the court, having in mind the circumstances as disclosed by the evidence, said: "We construe it to be no more than a declaration that in the exercise of ordinary care it is the duty of such a pedestrian to look to the right and to the left whenever he has voluntarily put himself in a position which may be one of peril coming from either direction, and in particular where he has received adequate warning of the likelihood of peril. . . . " The statement just quoted concerning adequate warning related to the evidence in the case that the defendant had blown a horn and that the pedestrian, in disregard of this warning, had, nevertheless, stepped from the sidewalk in front of defendant's approaching machine.

[2] The question of whether or not the pedestrian is negligent in crossing a street is one which, in the absence of express statutes regulating his conduct, must ordinarily be left to the jury, for the conduct of an ordinarily prudent person under such circumstances must be largely determined by the condition of the traffic at the particular time and place in question. There may be circumstances under which it can be said that the pedestrian is negligent as a matter of law. For instance, in the case of *Finkle* v. *Tait,* 55 Cal. App. 425 [203 Pac. 1031], in the case of a directed verdict, the district court of appeal affirmed the decision, but, in denying the transfer to this court (*Finkle* v. *Tait,* 55 Cal. App. 432 [203 Pac. 1034]), we sustained the conclusion of the district court of appeal solely for the reason that the pedestrian was crossing the street without looking and under such circumstances that he could *not* see in the direction from which traffic might be expected.

In the case of *Mann* v. *Scott,* 180 Cal. 550 [182 Pac. 281] we adopted a portion of the opinion of Mr. Justice Finlayson, written in deciding the case in the district court of appeal (180 Cal. 550, 554 [182 Pac. 281, 282]), as follows: "There is no positive duty to stop, look and listen when a

pedestrian is about to cross a city street . . . And it may be that if the jurors in this case rejected, as improbable, respondent's testimony that she looked and saw no approaching automobile, they, nevertheless, concluded—as well they might—that if she did see the automobile before leaving the sidewalk, she reasoned that its driver would comply with the city ordinance, referred to in the court's instructions, requiring an automobile traveling behind a street-car to stop ten feet in the rear of the car if it stops to let off or take on passengers, until the passengers have safely alighted from or boarded the car. Whether, if she saw the automobile, respondent would have been warranted in going toward the street-car without further watching the automobile approach, relying upon a compliance by the appellants with the requirements of the ordinance, as a question upon which men's minds might well differ, and hence it was properly a case for the jury . . ."

In the late case of *Reaugh* v. *Cudahy Packing Co.,* 189 Cal. 335 [208 Pac. 125], we had occasion to again consider the rule with reference to the obligations of a pedestrian in crossing a business street. It is there pointed out that the question of whether or not a pedestrian is negligent is to be determined from all the facts and circumstances in evidence in the case, and whether or not it was the duty of the pedestrian to look in a given direction at a given time was a question for the jury. (See, also, *Haines* v. *Fewkes,* 190 Cal. 477 [213 Pac. 490].) On the other hand, in *Klusman* v. *Pacific Elec. Ry. Co.,* 190 Cal. 441 [213 Pac. 38], we sustained the trial court in holding that the pedestrian was negligent as a matter of law in failing to look for an approaching interurban car.

It is sufficient for the purposes of a new trial in this case to say that where the evidence showed that the decedent looked in the direction of the approaching automobile and saw the automobile, and, nevertheless, proceeded to cross the street, it is for the jury to say whether or not his conduct with reference to the approaching automobile was, under all the circumstances at the time and place and conditions of the traffic, negligence on the part of the decedent.

We have not discussed the question of the negligence of the defendants for the reason that it seems to be conceded

by the parties and is assumed by the trial court that there was sufficient evidence of such negligence to go to the jury.

Judgment reversed.

Kerrigan, J., Lawlor, J., Lennon, J., Seawell, J., Waste, J., and Myers, J., concurred.

Rehearing denied.

In denying a rehearing the court filed the following opinion on April 21, 1923:

WILBUR, C. J.—The defendants petition for a rehearing on the ground that the question of their alleged negligence is not sufficiently disposed of in the opinion. The defendant Clopton, who was driving the automobile, admitted that he was exceeding the speed limit and that his brakes were defective and that for that reason he could not stop or avoid the collision. It is conceded that upon this statement there was sufficient evidence of his negligence to go to the jury. It is pointed out, however, that these admissions were not binding upon the respondent Bullock's Company, and this is true. We will, therefore, give further consideration to the claim of respondent Bullock's. In respondents' brief the facts are thus stated: "It appears affirmatively that the deceased saw the automobile in time to avoid the accident, and it also appears without contradiction that the driver of the automobile did not see the deceased until he was within ten feet of the radiator, when he used every effort to avoid the accident. The driver of the automobile had the headlights of the street-car shining in his face, and both the driver and the deceased testified that under the existing conditions visibility was low."

The appellants state additional facts in their reply brief bearing upon the question of the negligence of the defendants as follows:

"It is admitted that the defendant Clopton was the driver of the car that struck the deceased, Burgesser, and that at the time of the accident Clopton was acting within the scope of his employment for the defendant Bullock's. Clopton testified that he was driving a Ford Speedster; that it was heavy twilight and that he could not see an object very well; that he was driving about twenty miles an hour; that his brakes did not respond; that they were either

worn or strained; that on other stops that day his brakes appeared to be somewhat lax or loose; that when he first saw the deceased he was about a foot or a step south of the street-car; that the headlight on the street-car did not affect him much; that he observed a number of persons getting off the street-car just about the time he struck the deceased; that they all flashed up like a pistol-shot; that when he hit the deceased it somersaulted him. . . .

"The automobile, Clopton testified, was traveling twenty miles an hour. According to the testimony of Clopton, the deceased traveled more than halfway across Jefferson Street while he [Clopton] traveled ten feet in his automobile, the automobile traveling at a speed of twenty miles an hour. . . ."

The respondents are in error in stating that there was no direct statement as to the speed of the automobile. The driver Clopton was asked: "How fast were you traveling at the time of this accident when you saw Mr. Burgesser? A. I think about twenty miles an hour and possibly less." There was other evidence from which the jury might have inferred the speed of the automobile, which we need not state in detail. There was testimony that the automobile traveled fifty or sixty feet after hitting the deceased and that at the speed of twenty miles an hour with the brakes in good condition the automobile could have been stopped in from twenty to twenty-five feet. There was also other evidence that the brakes were not working well. The defendants' automobile crossed an intersecting street after it was first observed by the deceased. In view of the necessity of a new trial we refrain from a careful analysis of the testimony for the reason that the question of negligence and contributory negligence is essentially one for the jury.

In view of the fact that respondents so earnestly insist that there is no substantial evidence of negligence on their part it should perhaps be said that in many jurisdictions it is held negligence as a matter of law for a person to operate an automobile in the night-time at such a speed that he cannot stop the machine and avoid an obstruction or other traveler within the distance that the highway is illuminated by his lights. These cases are collated in the note to section 307 of Huddy on Automobiles, fifth edition, wherein the rule is stated as follows:

"Reasonable care requires in many cases that the driver of a motor vehicle drive at a slower speed at night than during the day. It may be true that in a busy street in a large city, a greater speed would be justified at night, for then the other traffic would be lighter, but ordinarily a greater speed is allowed in the daytime. One restriction on his speed is that he shall keep the machine under such control and operate it at such speed that he can stop the machine and avoid an obstruction or other traveler within the distance that the highway is illuminated by his lights. As was said in one case, 'It was negligence for the driver of the automobile to propel it in a dark place in which he had to rely on the lights of his machine at a rate faster than enabled him to stop or avoid any obstruction within the radius of his light, or within the distance to which his lights would disclose the existence of obstructions. . . . If the lights on the automobile would disclose obstructions only ten yards away it was the duty of the driver to so regulate the speed of his machine that he could at all times avoid obstructions within that distance. If the lights on the machine would disclose objects farther away than ten yards, and the driver failed to see the object in time, then he would be conclusively presumed to be guilty of negligence, because it was his duty to see what could have been seen.' This proposition applies when the driver is making a turn in the road; and is applicable when the bright light from another machine is shining in the face of the driver. Moreover, the rule applies where the regular lights are not working and the driver is using a lantern hung in front of his radiator. The same principle is involved when, on account of a blinding snowstorm, the driver can see but a short distance ahead of his machine."

While this court has never adopted that rule, we are certainly not prepared to go to the other extreme of holding that it is no evidence of negligence whatever for a driver of an automobile to travel at a speed of twenty miles an hour with his lights so dim that he is unable to see a pedestrian more than ten feet in advance of his headlights when he cannot stop within twenty or twenty-five feet and when the evidence shows that he does not in fact stop for fifty or sixty feet. We repeat the question of the negligence of the defendants was one for the jury to determine under the evidence.

In defendants' petition for a rehearing it is urged that it is our duty to at least mention and repudiate the doctrine announced by the first district court of appeal in *Mayer* v. *Anderson,* 36 Cal. App. 741 [173 Pac. 174], if that is the effect of our decision, and it is also urged that the decision of that court in *Spring* v. *Tawa,* 49 Cal. App. 100 [192 Pac. 1051], is directly in point and was entitled to consideration.

While we do not recognize any obligation on the part of this court to interpret and distinguish decisions of the district court of appeal because it is contended that the rule there laid down is inconsistent with the one adopted by this court, either in its previous opinions or in the opinion pronounced, in view of the respondents' insistence, it is proper to say that both cases are readily distinguishable from the case at bar. In *Spring* v. *Tawa,* 49 Cal. App. 100 [192 Pac. 1051], the pedestrian was standing in a position of safety and being frightened by the approaching automobile ran toward it and into its side as it passed her. Moreover, the rule stated in that case as to the duty of the trial court in directing a verdict is incorrectly stated as follows: "The rule has been laid down, both in the supreme court and in this court, that the ruling of a trial court as to whether a given state of facts presented before it does or does not amount to negligence as a matter of law will not be disturbed on appeal in the absence of a clear showing of an abuse of discretion. (*Mayne* v. *San Diego Elec. Ry. Co.,* 179 Cal. 173 [175 Pac. 690] ; *Diamond* v. *Weyerhaeuser,* 178 Cal. 540 [174 Pac. 38] ; *Charves* v. *San Francisco O. T. Ry.,* 44 Cal. App. 221 [186 Pac. 154])." The authorities cited do not sustain the rule laid down. The case of *Mayne* v. *San Diego Elec. Ry. Co., supra,* cited by the district court in support of its statement was one involving the alleged contributory negligence of a child of fourteen years of age and it was in this connection that it was stated "that as a rule courts upon appeal have not interfered with the discretion of trial courts in referring or in refusing to refer to juries the question as to whether the contributory negligence of children of the age of fourteen years or under was such as to prevent their recovery for injuries sustained by them." (179 Cal. 177 [175 Pac. 692].) The correct

rule is stated in *Diamond* v. *Weyerhaeuser,* 178 Cal. 540 [174 Pac. 38] :

[3] "If there was any substantial evidence tending to show that the collision was caused by negligence on the part of defendant's driver, the action of the court in directing a verdict was, of course, erroneous. The existence or non-existence of negligence is ordinarily a question of fact to be determined by a jury. On the other hand, the court may withdraw the case from the jury and direct a verdict where the evidence is undisputed, 'or is of such conclusive character, that the court, in the exercise of a sound judicial discretion, would be compelled to set aside a verdict returned in opposition to it.' (*Davis* v. *California St. C. R. R. Co.,* 105 Cal. 131 [38 Pac. 647] ; *Estate of Baldwin,* 162 Cal. 471 [123 Pac. 267].) "

With reference to the case of *Mayer* v. *Anderson, supra,* respondents earnestly insist that the case is "not distinguishable and is in direct conflict with the principle of law announced in the case at bar." To distinguish that case from this it is only necessary to note that the plaintiff in that case walked across Kearny Street on the north side of Market Street in San Francisco at 5 o'clock in the afternoon when the traffic was very heavy, "looking straight ahead, without glancing to either side, and was absolutely oblivious to the proximity of the automobile right up to the moment of the impact, at which time he had traversed about three-quarters of the distance across the street." The court properly held that the pedestrian was bound to do more than this, in the exercise of due care, to avoid colliding with an automobile traveling no faster than the pedestrian was walking.

Rehearing denied.

Kerrigan, J., Lennon, J., Seawell, J., Lawlor, J., and Myers, J., concurred.