[Civ. No. 7887. First Appellate District, Division One.—January 26, 1932.]

NONA LONG, Appellant, v. ERNEST BARBIERI, Respondent.

Otto K. Grau and M. Mitchell Bourquin for Appellant.

Ross & Ross for Respondent.

ATTERIDGE, J., *pro tem.*—Appellant, as plaintiff in the court below, brought this action to recover damages for personal injuries alleged to have resulted from the negligent operation by defendant of his automobile. In addition to denying the existence of the negligent acts attributed to him, defendant affirmatively pleaded contributory negligence on the part of plaintiff as a proximate cause of her

injuries. The action was tried before a jury, who returned a verdict in favor of defendant, and it is from the judgment entered thereon and an order denying a new trial that plaintiff appeals.

It is a resultant inference arising from the minute examination we have made of the record that the verdict of the jury was necessarily predicated upon a finding on its part that plaintiff was guilty of contributory negligence; for, as hereinafter pointed out, negligence on the part of defendant clearly appears. For this reason, and because of certain established evidentiary facts hereinafter referred to in detail, the instructions of the court upon the subject of contributory negligence were of crucial importance to a fair and correct determination of the case by the jury.

The accident occurred at 8:15 P. M. on the evening of February 22, 1930, at the intersection of Broadway and El Camino Real in the city of Burlingame. El Camino Real, which is the main artery of vehicular traffic to and from all points south of San Francisco, runs north and south. It is intersected in the city of Burlingame by Broadway, which runs approximately east and west. All corners of these intersecting streets are supplied with traffic signals, which at regular intervals change from red to amber and finally to green lights as established safety measures for the regulation and control of the halting and advancement of vehicular and pedestrian traffic at this point. At the time and on the occasion in question plaintiff *with the green light displayed in her favor* on the aforementioned signals, sought to cross El Camino Real on the trajection formed by the extension of the south intersecting line of Broadway, and was walking in a metally marked pedestrian lane. A most peculiar conflict in the evidence exists as to whether plaintiff was crossing El Camino Real from the west to the east curb as she testifies, or from east to west as a motorist who arrived just prior to the accident, alone testified. His testimony that ''I glanced over, I did not continue to watch her to see where she was going, and I glanced over to look at the signal and did not see that she had got in front of the machine and got in an accident'' was the sole gauge by which the jury could measure the accuracy of his testimony against that of plaintiff's. No other contrary witnesses were produced who could testify on this point, *for defendant never even*

*saw plaintiff until the moment his car struck her.* As a reviewing court, we are of course bound to resolve the conflict on this point in favor of respondent, and assume if it would tend in any degree to affect or support their verdict that the jury believed the but recently arrived motorist as against the perhaps more plausible and better advised testimony of plaintiff. ■ This conflict, however, is wholly immaterial to the merits of the appeal, for regardless of whether she was walking from west to east or *vice versa,* plaintiff was proceeding in the established pedestrian lane with the green signal to advance in her favor and consequently, if then engaged in the exercise of ordinary care for her own safety, was proceeding along a path where she had the right to be.

Plaintiff testified that with the intention of posting a letter (found on her person after the accident) she arrived at El Camino Real at a time when the traffic signal was against her. The mail box was at a point east of said street. She further testified: " . . . I waited a few seconds until the signal was clear, and it flashed on green and *I looked to the left and then to the right* and I started to cross and just as I got almost to the center *I glanced again* and this car was right on me, it hit me as I saw it." On cross-examination she further testified:

"Q. Did it (defendant's automobile) strike you at about the same time as you saw it?

"A. Yes sir.

"Q. Now, when you stepped down on the street, you did not see that automobile at that time?

"A. No sir.

"Q. Nor did you see it at any time until you had about reached the center?

"A. No.

"Q. That was the first time that you had seen that car?

"A. Yes sir."

The foregoing testimony of plaintiff that she looked at the times and places stated was uncontradicted. Every one of the further admissions made by her thereafter on cross-examination could have happened just as detailed by her and notwithstanding the same plaintiff *would not necessarily have been guilty of contributory negligence as a matter of law.* For as defendant entered El Camino Real from east

Broadway he states the lights changed to green and so he did not stop, but continued to make a left-hand turn and then proceeded south on the main highway. In order to do this he had to proceed to the approximate center of the intersecting streets and there change the direction of his car. To reach the spot where his car struck plaintiff he necessarily had to travel a greater distance than did plaintiff, who was walking directly across the street from curb to curb in a straight line. The fact that while walking plaintiff had already reached almost the center of the street indicates that she must have left the curb line at least as early as defendant in his faster moving vehicle. ■ Defendant definitely admitted that the *only time* he ever looked over into the pedestrian lane until the very moment his car struck plaintiff was just as he emerged from Broadway into El Camino Real in the following language:

"Q. And as you proceeded out into the intersection making your turn, you looked only directly before you and you did not look over into that pedestrian lane, did you?

"A. Well, *the only time I glanced at the pedestrian lane was when I left the property line.*

. . . . . . . . . . . .

"Q. That is, when you left the easterly property line on the highway you say you glanced at the pedestrain lane?

"A. Right.

"Q. . . . From the time you started out into the intersection from the easterly property line you did step on the gas and increased your speed as you turned there, didn't you?

"A. Yes sir.

"Q. And as you turned there you looked out and watched this other machine (coming in the opposite direction from West Broadway and into El Camino Real), didn't you? (Parenthetical insertion ours.)

"A. Right.

"Q. And you did not see the lady . . . , *until you struck her,* did you?

"A. No sir, I did not.

"Q. You saw her and hit her *at the same time,* is that correct?

"A. Yes sir.

"Q. You did not see her move at all, did you?

"A. No sir."

That the foregoing admitted acts and conduct of defendant would be a sufficient predicate upon which to base a finding of negligence is thoroughly established in this state by numerous precedents. In *Moeller* v. *Packard,* 86 Cal. App. 459, 470 [261 Pac. 315, 320], the court states that

"It is, of course, the duty of operators of motor vehicles over the streets and highways of the state *constantly* to keep in mind the probability of encountering other persons using such streets and highways either as pedestrians or motorists. They must anticipate that such a situation may arise *at any moment.* In other words, they will not be permitted to close their eyes to the fact, of common knowledge in these days of dangerously 'rapid transit' over the highways of the state, that they may at any instant of time meet or overtake motorists or pedestrians traveling in or from the same direction in which they are going."

The Supreme Court, in *Reaugh* v. *Cudahy Packing Co.,* 189 Cal. 335, 340 [208 Pac. 125, 127], declares that the driver of an automobile is "bound to anticipate that he may meet persons at any point of the street, and he *must,* in order to avoid a charge of negligence, *keep a proper lookout* for them and keep his machine under such control as will enable him to avoid a collision with another person using proper care and caution, and *if the situation requires he must slow up and stop".* (See, also, *Rush* v. *Lagomarsino,* 196 Cal. 308, 317 [237 Pac. 1066].)

With the aforestated evidentiary situation as the background therefor, the trial court at the request of defendant gave the jury the two following instructions on the subject of contributory negligence:

10. "It was the duty of the plaintiff, *as the act of an ordinary prudent person,* immediately *before placing herself in a position of danger,* to look in the direction from which danger was to be anticipated. *This was a continuing duty.* In the exercise of ordinary care, it was the duty of the plaintiff, as well as it is the duty of every pedestrian, *to look to the right and to the left* whenever she has voluntarily placed herself in a position which might be one of peril, coming from either side."

12. *"If you believe that the plaintiff without looking* for approaching vehicles walked in front of the automobile in question, then *you are instructed that she was guilty of contributory negligence and plaintiff cannot recover."*

 Although the first above quoted instruction (numbered "10") has for its genesis an excerpt adopted *verbatim* from the opinion of the court in the case of *Wing* v. *Kishi,* 92 Cal. App. 495, at pp. 498, 499 [268 Pac. 483], its delivery to the jury in its given form serves to emphasize the pertinency of the suggestion heretofore made by this court "that it is a dangerous practice, and one not to be followed, to take excerpts from the opinions of courts of last resort and indiscriminately change them into instructions to juries". (*Rosander* v. *Market Street Ry. Co.,* 89 Cal. App. 710, 718 [265 Pac. 536, 540].) For the excerpt in question, viewed in its entirety, was undoubtedly intended to apply *only* to the particular question then under adjudication by the court, which concerned *not* the correctness or propriety of any given instruction, but solely the sufficiency of the evidence in that particular case to sustain a finding of contributory negligence by a trial court sitting without a jury. Irrespective of its correctness upon the question it adjudicated, when the same excerpt is viewed in its application to the facts of the instant case as an *instruction* to the jury, it will be found erroneous and prejudicially injurious in the several particulars hereinafter pointed out. In its application to the present case it first assumes that a pedestrian about to cross a city street in a marked pedestrian lane with the traffic signal in her favor, *ipso facto* places herself *"in a position of danger"*. (The unsoundness of this assumption is later herein considered at length.)

It further declares that it was the "duty of plaintiff to look *before* placing herself in a position of danger". In its application to the facts of the present case this could *only* have been understood by the jury to mean that irrespective of the existing situation, *plaintiff must look before crossing a city street,* for such crossing in the nature of things was the *only* possible place where she would be in a "position of danger" or from which "danger was to be anticipated". This ultimate requirement of the instruction that the plaintiff as a matter of law must look *before* crossing a city street is directly contradicted by a series of

decisions on the point, including those of our court of last resort, which have never been overruled. Typical of these is *Mann* v. *Scott,* 180 Cal. 550, 554 [182 Pac. 281, 282], where the Supreme Court declares:

"There is no positive duty to stop, look, and listen when a pedestrian is about to cross a city street." (Citing authority.) (See, also, *Reaugh* v. *Cudahy Packing Co., supra; Hansen* v. *Market St. Ry. Co.,* 64 Cal. App. 426, 431 [221 Pac. 955]; *Park* v. *Orbison,* 43 Cal. App. 74, 78 [184 Pac. 428].)

We are not unmindful of the fact that there is another series of cases, embraced in which is *Wing* v. *Kishi, supra,* that appear at first glance contradictory of the rule stated in *Mann* v. *Scott, supra.* But these cases usually refer as the ultimate source of authority for the rule they enunciate, to the case of *Niosi* v. *Empire Steam Laundry,* 117 Cal. 257 [49 Pac. 185], where an instruction was approved which requires a foot-traveler to look both ways before crossing a highway where vehicles frequently pass. The doctrine of the Niosi case was, however, explained and its application limited in the more recent case of *Burgesser* v. *Bullock's,* 190 Cal. 673 [214 Pac. 649], in which stress was placed upon the narrowness of a certain street (which was in fact an alley) as an involved circumstance warranting the instruction given in the first-mentioned case; and it was further expressly stated that the case was to be considered in the light of the particular facts involved. In the case of *Nickell* v. *Rosenfield,* 82 Cal. App. 369, 374, 375 [255 Pac. 760, 762], the court had occasion to review at some length the above referred to uncertainty arising from the adjudicated cases, and the effect of the Niosi case was there considered in the light of more recent decisions, and it was pointed out that the conclusion reached by the Supreme Court in *Burgesser* v. *Bullock's, supra,* was that "it is a question of fact *for the jury to determine* whether the conduct of a pedestrian under all of the circumstances at the time and place and conditions of traffic was or was not negligent". The present instruction obviously contravenes this rule, in that it undertakes to definitely advise the jury that the failure of the plaintiff to successfully look at *practically all times* would under the existing cir-

cumstances constitute contributory negligence on her part as a matter of law.

It will be further observed that after first requiring the plaintiff *to look before* crossing the street, the instruction next declares *"this was a continuing duty"*. The sequence of the language used could only have been understood by the jury to mean that it was the duty of plaintiff *to look continuously;* and finally to intensify the specific duty it placed upon plaintiff to at all times look to its highest degree, the instruction told the jury that she must look *"to the right and to the left"* for the efficacy of the qualifying portion of the instruction, enjoining this duty when she has "voluntarily placed herself in a position of peril", is completely destroyed by the earlier assumption in the instruction *that she had already so placed herself.* The stringent and specific requirements of this instruction that irrespective of existing circumstances a pedestrian must look "continuously" and both "to the right and left" or be arbitrarily adjudged guilty of contributory negligence have been repeatedly condemned as incorrect propositions of law. The Supreme Court, in the case of *Filson* v. *Balkins,* 206 Cal. 209, 212 [273 Pac. 578, 579], declares:

"We know of no rule of law that absolutely required the plaintiff to keep a continuous gaze to the south after examination and appraisal of the situation and the justifiable conclusion that he could cross in safety."

In the case of *Park* v. *Orbison, supra,* at page 78, it is said:

"He (plaintiff) was not bound to look and listen for approaching vehicles when he started across the street, regardless of the circumstances of his environment. There might well be circumstances when to fail to do so would amount to negligence. (*Mann* v. *Scott,* 180 Cal. 550 [182 Pac. 281].) And for like reasons it cannot be said, *as a matter of law,* that plaintiff was negligent in not keeping a vigilant lookout for approaching machines *coming from both directions* before he reached the center of the street."

In the case of *Nickell* v. *Rosenfield, supra,* at page 376, this court said:

"It seems readily apparent that if a pedestrian in crossing a street looks before leaving the curb and sees nothing approaching within any short distance, and there

is nothing shown that he or she must have seen by ordinary use of the faculty of sight, then it is eminently proper to proceed *without constant watch* in the direction of that particular traffic.'' (See, also, *Wright* v. *Foreman,* 86 Cal. App. 595, 603 [261 Pac. 481].) (All italics in quotations ours.)

As previously stated, the instruction as given assumes without qualification that the metally marked pedestrian lane upon which plaintiff was walking with the green light displayed in her favor, was of itself ''a position of danger''. In order to present a sound instruction on this point it at least required the further qualification ''if you find she did place herself in a position of danger''; for it cannot be assumed that a definitely marked pedestrian lane terminated by an open traffic signal inviting pedestrians to occupy it as a crossing, is *per se* ''a position of danger''. Such a crossing will not be ''a position of danger'' if intersecting vehicular traffic about to cross the path of pedestrian traffic will exercise the precaution now exacted of it under the recently enacted section 131½ of the California Vehicle Act (Stats. 1931, p. 2127, sec. 47), which in part reads:

''The driver of any vehicle shall yield the right of way to a pedestrian crossing the roadway within any marked crosswalk . . . ''

While the present case arose prior to the amendment, the quoted section serves to elucidate a principle applicable to the situation disclosed by the evidence (*Cleveland* v. *Petrusich,* 117 Cal. App. 71 [3 Pac. (2d) 384]), and one which has as well, for the basis of its requirement, the rule announced and recognized in *Reaugh* v. *Cudahy Packing Co., supra.*

Aside from the reasons earlier herein expressed for disapproving the instruction numbered ''10'', it is to be remembered that except in so far as the conduct and duties of a pedestrian are regulated by statute, the questions of contributory negligence or of negligent conduct in almost every given case are to be determined by reference to the general principles of the common-law doctrine of negligence, which require that he should exercise ordinary care for his own safety; and the amount of that care is in turn largely dependent upon the conditions and circumstances existing at the given time and place. The instruction in question

removes from the jury its prerogative of determining whether or not the conduct of the plaintiff (as the jury shall find it to have been) conformed to the standard of ordinary care, and in lieu thereof substitutes a fixed and rigid standard given to it by the court. The approval of such an instruction would add measurably by a process of judicial accretion to the existing burdens confronting injured pedestrians in obtaining redress for injuries.

The second instruction (numbered "12") is also subject to criticism. It directs a verdict against plaintiff and finds her guilty of contributory negligence if the jury merely *believed* that without looking for approaching automobiles she walked in front of defendant's car. In the first place, the instruction is elliptical in that it does not require the "belief" of the jury upon this important question to be based upon the evidence but instead permits the conjecture of the jury as to whether or not plaintiff looked to control their verdict; and that they may have given it that effect is a possible inference arising from the first verdict which they returned, reading: "We, the jury in the above entitled cause, find a verdict unavoidable accident, no damage to either party." This the trial court construed to be a verdict in favor of defendant, and then directed the jury to reform it so as to read for the defendant in the usual form. But the outstanding vice of the instruction is that although in express terms declaring the plaintiff guilty of contributory negligence if the jury believed she did not look, it entirely omitted the necessary qualification that in order to defeat a recovery by plaintiff such contributory negligence must be a proximate cause of her injuries. Instead, it rebuts and negatives this essential requirement of other instructions in which a verdict is directed upon the issue of contributory negligence by immediately stating without qualification that if the jury believed plaintiff did not look, she was *ipso facto* guilty of contributory negligence *and could not recover*.

An instruction which by its terms purports to state the conditions necessary to a verdict must embrace every material element requisite to its validity. (*Sinan* v. *Atchison etc. Ry. Co.*, 103 Cal. App. 703, 715, 716 [284 Pac. 1041], and cases therein cited.)

It should be further noted that the trial court omitted to give any instruction whatsoever defining "proximate cause",

and the jury were thus left to their own varying conceptions, if any, as to what might constitute this always related and ever essential principle of the doctrines of negligence and contributory negligence.

■ Plaintiff contends that the trial court erred in refusing to permit her to impeach a witness produced on behalf of defendant by asking him the following question:

"Q. In 1918 you were tried in San Francisco for shooting and killing a woman by the name of ———?"

The trial court was entirely correct in refusing to permit the impeaching question to be answered in its given form. Impeachments of this character are limited by section 2051 of the Code of Civil Procedure by confining them to the establishment either from the examination of the witness or by a record of the judgment, the *fact* of a conviction of a felony. Here there was no attempt made to show that the witness had been convicted of the offense mentioned, and the question merely sought to establish that he had been tried for such an offense. In its given form the question was clearly objectionable. (*People* v. *Hamblin*, 68 Cal. 101 [8 Pac. 687] ; 27 Cal. Jur. 143.)

We refer to and adopt as additional reasons for reversing this case on account of the erroneous instructions in question, the prior statement of the court, addressed to a similar situation, as set forth in the case of *Nickell* v. *Rosenfield*, *supra*.

The judgment and order are reversed and the cause remanded for a new trial.

Tyler, P. J., and Knight, J., concurred.