[Civ. No. 1757.   Fourth Appellate District.—July 8, 1936.]

CARRIE FRANCIS et al., Appellants, v. F. O. RIDDLE et al., Respondents.

Farnsworth, Burke & Maddox and James K. Abercrombie for Appellants.

McFadzean & Crowe for Respondents.

BARNARD, P. J.—This is an action for damages arising out of a collision between a pedestrian and an automobile used as a laundry truck. After a verdict and judgment in favor of the plaintiffs the court granted a motion for a new trial and the plaintiffs have appealed from that order. For convenience, the plaintiff wife will be referred to as the appellant and the driver of the laundry truck as the respondent.

The order granting a new trial did not specify the insufficiency of the evidence as a ground therefor, and the question here raised is whether or not the verdict is against law for the reason that the appellant was guilty of contributory negligence as a matter of law.

The accident happened on the afternoon of August 12, 1933, on a paved highway some two miles north of the city of Visalia. This highway runs north and south, the pavement being 16 feet wide and the right of way approximately 48 feet wide. The appellant and her husband lived on a place on the east side of this highway, their front fence being set back so that it was 31 feet from their front gate to the pavement. About 30 feet south of their front gate an unpaved public road came into the highway from the east but did not cross it. However, a private driveway extended to the west from the highway, the south edge of which was what might be called an extension of the north edge of the unpaved public road coming in from the east.

Just prior to the accident the appellant heard a cry for help from a neighbor who had become caught in his tractor on his place across the highway from appellant's home, and near the private drive referred to. Her husband rushed across the highway and she told him she would follow as soon as she put down some eggs which she carried. She started almost immediately and went through their front gate which is a short distance north of the private driveway on the opposite side of the highway, and still farther north of the unpaved public road which adjoins her home on the south.

She stopped at some point between her front gate and the pavement and looking both ways saw another neighbor, Dr. Wakefield, coming north on the highway and signaling for a left turn into the private driveway on the west side of the highway. She also saw two automobiles coming from the north. She waited for the first one to pass and then thinking she had time to cross started across the paved highway. When about two-thirds of the way across the pavement she collided with the second car she had seen, the one driven by the respondent. This was a Studebaker automobile, with a delivery body, used as a laundry truck. The respondent was proceeding south on his own side of the highway and near the west edge of the pavement. The appellant's brief argues that she did not run into the truck, explaining the actual collision as follows: "In fact he came so fast that he ripped across the path of Mrs. Francis and snagged her as he went by." However, it conclusively appears from all of the evidence that she ran or walked into the left side of the truck, striking it at a door handle slightly in front of the left rear fender in such a manner that this handle caught her arm, and apparently the front part of the left rear fender also struck her, and she was knocked or dragged some 30 or 40 feet, where she fell on the pavement.

The appellant relies on such cases as *Long* v. *Barbieri*, 120 Cal. App. 207 [7 Pac. (2d) 1082], *Burgesser* v. *Bullock's*, 190 Cal. 673 [214 Pac. 649], *White* v. *Davis*, 103 Cal. App. 531 [284 Pac. 1086], and *Flach* v. *Fikes*, 204 Cal. 329 [267 Pac. 1079, 1080]. While the court said in the last of these cases that "it cannot be said that a person is guilty of contributory negligence merely because he attempts to cross a street when an automobile is approaching", that case does not purport to hold that the question of contributory negligence on the part of one attempting to cross a street when an automobile is approaching is always one of fact. The decision was based upon the circumstances there existing, and the court points out that there was evidence that the defendant was traveling at an illegal rate of speed and that the deceased may well have reasoned that the defendant was traveling at a lawful rate of speed and that, in that event, he would have had time to cross the street in safety. It may be further observed that it does not appear in the

opinion in that case that the deceased was not attempting to cross at an established crosswalk.

While it may be taken as pretty well established that the question of contributory negligence, where one looks but does not see an approaching automobile or seeing it misjudges its speed or distance, is usually one of fact the question must depend upon the circumstances in each particular case. And where these circumstances are such as to justify a conclusion of negligence, the question becomes one of law.

In *Sheldon* v. *James,* 175 Cal. 474 [166 Pac. 8, 2 A. L. R. 1493], the court said that even in the absence of a law limiting a pedestrian to an established crosswalk "a greater degree of care is necessary upon the part of the pedestrian who undertakes to cross a congested highway other than at the established crosswalk, and especially so, if in the act he does not essay a direct crossing but pursues a long diagonal route. . . . The observation of ordinary care by such a pedestrian is not fully performed by merely looking to the left or right as he steps upon the street. The observance of that care is imperative upon him during all of the time he is crossing." In *Brkljaca* v. *Ross,* 60 Cal. App. 431 [213 Pac. 290], the plaintiff and a companion started to cross a street. They stopped at the curb to allow one automobile to pass and then proceeded. When they arrived at the center of the street the companion stopped but the plaintiff proceeded and was struck by another automobile coming on its own side of the street and well over toward the other curb. In its opinion the court pointed out that it was the duty of the plaintiff as he passed the center line to have looked to his right, in the direction from which danger was to have been expected, and then stated that his act in proceeding was, under the circumstances, negligence as a matter of law. In denying a hearing the Supreme Court observed that since the jury had found contributory negligence as a matter of fact it was not necessary to predicate the opinion upon such negligence as a matter of law.

In *Horton* v. *Stoll,* 3 Cal. App. (2d) 687 [40 Pac. (2d) 603], a school girl, crossing a street between intersections under the impression that she had plenty of time to cross, passed the center of the street and stepped in front of an approaching automobile. A companion, who was slightly

behind her, was not injured. In affirming a judgment of nonsuit, the court said:

"It is well established that where the facts are clear and undisputed, and where no other inference than that of negligence or contributory negligence can be drawn from such facts, a court is authorized to withdraw the question from the consideration of the jury. A pedestrian can be so careless that his conduct is negligence as a matter of law. (*Burgesser* v. *Bullock's,* 190 Cal. 673 [214 Pac. 649]; *Finkle* v. *Tait,* 55 Cal. App. 425 [203 Pac. 1031].) We are of the opinion that the facts of this case show affirmatively that plaintiff failed to use due care and that her failure in this respect was the proximate cause of the injury, precluding a recovery. It shows that plaintiff, in her position in the center of the street, where there was no marked crosswalk, failed to use a proper degree of care for her safety. She did not remember that she looked for approaching cars in the directions from which they would come, but only that she gained the impression she had plenty of time to get across the street. Had she looked, she must have seen defendant's car approaching a few feet away, for she had taken only a step or two from her position of safety when she was struck. It is the invariable rule that it becomes the duty of a person who purposes to cross a city street to look carefully in the direction from which he may anticipate the approach of vehicles immediately before venturing into the pathway of traffic. (*Bence* v. *Teddy's Taxi,* 101 Cal. App. 748 [282 Pac. 392, 283 Pac. 86].) It was plaintiff's further duty from the position she was in upon the highway to yield to defendant the right of way. (California Vehicle Act, sec. 131½c.) The only conclusion that can be reached from the evidence is that plaintiff failed to take the trouble to properly look for automobiles on the side of the street as she crossed, or that she saw the automobile and for some unexplained reason stepped directly in its path. Under either theory she failed to use due care, which precludes her right to a recovery. (*Spring* v. *Tawa,* 49 Cal. App. 100 [192 Pac. 1051]; *Finkle* v. *Tait, supra.*) Under the circumstances we fail to see how the trial court could have reached a different conclusion."

A judgment of nonsuit was affirmed in *Ramsperger* v. *Los Angeles M. C. Co.,* 4 Cal. App. (2d) 673 [41 Pac. (2d) 562],

where the plaintiff, in attempting to cross a street at a place other than an established crosswalk, slowed up about the middle of the street and after glancing toward an approaching bus, which was well within the possibilities of her vision, started on and ran into the side of the front end of the left front fender of the vehicle. In *Gaston* v. *Hisashi Tsuruda,* 5 Cal. App. (2d) 639 [43 Pac. (2d) 355], a judgment for the plaintiff was reversed. The plaintiff and her husband, after alighting from a street car, attempted to proceed from a safety zone to the curb at a place other than an established crosswalk. Her husband saw the danger and attempted to warn her, but the wife, although she said she was looking all the time, proceeded toward the curb and walked into the side of the left front fender of an approaching truck. The court pointed out that the husband saw what the wife saw but exercised care and escaped harm, and held that the only possible conclusion was that the plaintiff failed to exercise reasonable care in walking directly into the side of the truck as it crossed her path. In *Chase* v. *Thomas,* 7 Cal. App. (2d) 440 [46 Pac. (2d) 200], the court reversed a judgment in favor of the plaintiff where he stepped across the center line of a street and was struck by a car coming on its own side, on the ground that his conduct constituted negligence, as a matter of law, in that he violated section 131½ of the California Vehicle Act, and because he left a place of safety and stepped into a position of danger without taking adequate precautions before so doing. In the four cases last cited hearings in the Supreme Court were denied.

We think the circumstances here appearing remove this case from the rules laid down in the line of cases first referred to, and bring it within the principles applied in those last cited.

The respondent testified that he saw the appellant coming from the side of her house on the run; that she came through the gate; that she stopped near the gate and looked toward Dr. Wakefield who had stopped or was stopping on the east side of the highway opposite the entrance to the private drive above referred to; that she appeared to be motioning and talking to Dr. Wakefield; that he had slowed down to possibly 15 miles an hour; that when he saw her stop he stepped on the throttle and sounded his horn; that sud-

denly the appellant "ducked her head and just ran across the road as hard as she could go"; that he did not see her strike the car but felt it; and that she struck the car at the handle of the door on the left side. A picture of the car indicates that this handle, which was bent by the collision, was back about two-thirds of the distance from the front end of the car to the rear wheel.

The appellant testified that she let the one car pass and looked up the road and saw another one coming but thought she had time to get across the road before it hit her; that when she saw the second car, driven by the respondent, it was up the road by a telephone pole which is some 320 feet north of her gate and that at that time she was "quite a distance from our gate"; that she did not continue to watch this car; that "I looked up and saw it coming, and then I looked again, and I didn't pay no more attention to it. I thought I had time to get across the highway before it hit me"; and that as she proceeded she "walked". On cross-examination she testified that she saw both cars just as she came through the gate, that the respondent's car was then up by the telephone pole, and when asked whether she had looked again to the north after she left the gate and after she had seen the car at the telephone pole, she replied: "No sir, I don't think I looked at it again. I think I just started across the road, because I thought I had time to get across the road before he hit me."

Dr. Wakefield testified that he had heard the neighbor's cry for help; that he was approaching from the south in a Franklin automobile; that he slowed down and finally stopped opposite the entrance to the private drive leading west from the highway to the premises of the neighbor who had called for help; that he was trying to get across the highway and signaled for a left turn; that when he stopped his right wheels were about a foot to the east of the pavement; that he was trying to turn in front of the first car but it did not stop; that as the second car approached he was motioning up and down; that he thought he would get him to stop as he "wanted to get in there pretty quick"; that he wanted to get in between the two cars; that he was watching the second car to observe whether it was going to slow down and whether it would give him an opportunity to turn in front of it; and that the second car did not stop or

slow down. He also testified that while he was stopping opposite the private drive the appellant came out and stopped to let the first car go by; that she stopped about two or three feet to the east of the pavement at a point slightly north of her gate and some 40 or 50 feet north of where his car was stopped; that she came to that point as the first car was going by; that "she didn't have to wait much" for the first car and as soon as it went by she "made this dash across the street, after looking up and down". He further testified that from the point where she stopped she proceeded at an angle in a southwesterly direction across the pavement toward the private lane which he was trying to enter; that she turned her head north and south before entering the pavement; that she did not talk to him or motion to him; that the second car struck her "on the door handle and the rear fender of the car" when she was about two-thirds of the way across the pavement; that the respondent was traveling about 35 or 40 miles an hour and that he did not slacken his speed before the impact; that it did not seem to him that the respondent's car swerved at all; that that car was "pretty well over to the other side" with one wheel off of the pavement on the west side; and that there was nothing to interfere with appellant's view of the laundry truck.

While it seems apparent from all of the circumstances that the appellant was running across this paved highway and while she herself testified that she did not look toward the approaching car after she left her gate we must, for the purpose of this appeal, view the evidence in the light most favorable to her. We must, therefore, assume that she stopped at a point two or three feet from the pavement and slightly north of her gateway, that she let one car pass and, after seeing the appellant's car coming some 320 feet away, walked across the pavement at an angle and not at a regular crossing, that she paid no further attention to the approaching car, and that she did not look again as she passed the center of the highway into the traffic lane where danger was to be expected.

While crossing the road in this manner the appellant ran into the side of the approaching car as it passed in front of her, striking it on its left side just in front of the rear fender. That car was so far over on its own side of the

road that its right wheels were off of the pavement. This was a main highway in the country and the appellant must have known that fast automobile traffic was to be expected there. She and her husband had lived on that place for more than twenty-five years, and her husband testified that during the preceding five years there had been lots of fast traffic on the road and in fact that it was "kind of a race track". It is most significant that Dr. Wakefield, who saw the same thing the appellant saw, if she looked, and who was in a great hurry to get across, realized the danger and feared to proceed, although he had less distance to travel, was 40 or 50 feet farther away from the approaching car, and was in an automobile with which he could have made a swifter crossing.

Had the appellant exercised the slightest degree of care as she left the place of safety, she would necessarily have seen the car which was then so close that the most of it passed in front of her before she could have taken more than one or two steps past the center of the highway. If, as she says, she was walking and not running her negligence would seem all the greater as she would then have had more opportunity to see it just before it reached her and while it was actually in front of her. She not only failed to yield the right of way and stepped from a position of safety into one of danger, but actually ran into the car after approximately two-thirds of it had passed by her.

Assuming that the respondent did not slow down and that he was guilty of negligence the conclusion is inescapable that the appellant also failed to use reasonable care and, in our opinion, no reasonable person could conclude, under the circumstances here appearing, that her negligence was not a proximate cause of her injuries.

The order appealed from is affirmed.

Marks, J., concurred.

Jennings, J., being absent, did not participate in this opinion.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 4, 1936.