[Civ. No. 8358.   First Appellate District, Division One.—September 26, 1932.]

JOHN BROWER, Respondent, v. WALTER ARNSTEIN, Appellant; STATE COMPENSATION INSURANCE FUND, Intervener.

Redman, Alexander & Bacon and Herbert Chamberlin for Appellant.

Ford & Johnson and Fletcher A. Cutler for Respondent.

ATTERIDGE, J., *pro tem.*—Respondent, John Brower, as plaintiff in the court below, brought this action to recover damages for personal injuries alleged to have resulted from the negligent operation by defendant of his automobile. The action was tried before a jury, which returned a verdict in favor of plaintiff for $2,750. This award, however, is subject to a first lien in favor of the intervening plaintiff, State Compensation Insurance Fund, in the sum of $637.94, and some of the other elements entering therein will be further discussed in our consideration of appellant's claim that the same is excessive as a matter of law. After seasonable motion for a new trial had been denied, appellant took this appeal from the judgment.

The accident resulted from a collision between defendant's automobile and plaintiff's motorcycle in the intersection of Bush and Larkin Streets in the city of San Francisco. Prior thereto plaintiff, proceeding northerly on Larkin Street, had momentarily stopped and rested his motorcycle in obedience to a sign or marker at this point reading "Stop—Arterial". At that time, according to his testimony, he observed defendant's automobile more than half a block away proceeding easterly on Bush toward Larkin Street. Shortly thereafter and at a time when the intersection was itself clear, plaintiff again started his motorcycle and had proceeded, at a speed of between three and four miles per hour, more than halfway across the medial line of Bush Street on Larkin, where he was then struck on the left side of his motorcycle, between the middle and rear thereof, by the left front bumper and fender of defendant's automobile. This low rate of speed is clearly and reasonably accounted for by the necessity of starting the motorcycle in low gear and the consequential slowness of what is colloquially termed its "pick-up".

Appellant states as his major contention that "the record fails to establish a case of liability against the defendant". By this we assume that in effect he contends that the evidence is insufficient to establish that the injuries were sustained as a result of negligence on his part. However, as we view the record it was entirely sufficient in this respect, particularly so in view of the repeated inconsistencies and self-contradictory changes with which defendant's testimony is replete, together with his marked absence of memory upon significant evidentiary factors connected with the accident, and his pronounced disposition to avoid giving direct answers to pertinent questions. This course of conduct undoubtedly left the jury in considerable doubt as to the accuracy of his entire testimony.

In addition to the inference of negligence which the jury could reasonably derive from the evidentiary situation already described (that is to say, a situation from which the jury could fairly find that the plaintiff, after first observing the precautions of stopping and looking, was struck by defendant's car at a time and place where he, plaintiff, had a right to be, after he had lawfully entered and had already traversed the major distance of the intersection prior

to defendant's entry therein), it was further entitled to find that the defendant was, under the existing circumstances, guilty of active negligence in failing to stop his car in time to avoid the collision—for amongst others of the defendant's above-referred to contradictory admissions was the following: "I was almost half way across the intersection (of Larkin street). Q. When you *first* saw the motorcycle? A. Yes, I was about half way. Q. Do you mean by that, the front of your automobile was about half way across? A. Yes." (Italics ours.) And again: "Q. You only saw the motorcycle just a second before the impact, did you not? A. Just a second?"

It will be noted that the answer to the last question is in the form of a counter-interrogation, but appellant, who undoubtedly clearly understood the question by reason of his *verbatim* repetition of its substance, made no attempt to disclaim either then or subsequently the inference therein contained, and in view of his definite admission that he had progressed almost halfway across the intersection before he ever saw plaintiff, it follows as a certainty from his admitted speed of fifteen to twenty miles per hour, that less than a bare second's interval elapsed between the moment he first saw plaintiff and his almost immediate collision with him thereafter.

It is the settled law of this state that a driver of an automobile is "bound to anticipate that he may meet persons at any point of the street, and he *must*, in order to avoid a charge of negligence, keep a *proper lookout* for them and keep his machine under such control as will enable him to avoid a collision with another person using proper care and caution, and *if the situation requires he must slow up and stop*". (Italics ours.) (*Reaugh* v. *Cudahy Packing Co.*, 189 Cal. 335, 340 [208 Pac. 125, 127]; *Rush* v. *Lagomarsino*, 196 Cal. 308, 317 [237 Pac. 1066].)

In view of these principles and under the evidence heretofore referred to, the jury could and by their verdict impliedly did find defendant guilty of negligence in failing to see plaintiff and stop his car in time to avoid the accident.

In avoidance of the inference of negligence that arises from his said failure to see plaintiff in time to avoid colliding with him, defendant stresses upon the claimed circumstance that when plaintiff stopped at the "arterial

stop'' sign hereinbefore referred to, he took up a position near the curb of the sidewalk on his right and that another automobile intervened between his said position and defendant's approaching car on the left. Plaintiff, however, definitely testified that his position was somewhat in advance of said intervening car (so that he could be easily observed). The jury, of course, was well within its province in believing plaintiff's version of the situation and in rejecting the contrary inference which appellant thus sought to have them draw.

We therefore hold that there was sufficient evidence on the issue of negligence upon which the jury could properly predicate their verdict.

■ Appellant also earnestly contends that the jury's verdict is excessive in the amount of damages awarded as a matter of law. The verdict, however, comes before this court sanctioned by the approving ratification of the trial court on motion for new trial where, as we observed from the record, similar considerations were elaborately urged and adversely determined by the trial judge. Reference is hereby made to the recent decision of the court in the case of *Sherwood* v. *Jackson, post,* p. 441 [14 Pac. (2d) 861], where the rule setting forth the limitations governing appellate courts in their consideration of claims of this character, as well as the weighty effect that must be accorded the trial court's approval of the jury's verdict, were both considered in such detail as to render further repetition thereof unnecessary herein. It is sufficient to say that the verdict now under review does not fall within the rule enunciated in *Sherwood* v. *Jackson, supra.* It was, as previously stated, for $2,750, of which the intervening plaintiff, State Compensation Insurance Fund, has already been allocated $637.94. The evidence shows that in the six months' period during which he was directly incapacitated from work as a result of his injuries, plaintiff proved a loss of over $400 in wages over and in excess of the amount allowed him from the State Compensation Insurance Fund. This leaves the net verdict for pain, suffering, permanent injury, impaired future earning capacity and permanent disfigurement at approximately $1679.50.

Plaintiff's entire right hand was extensively mutilated as the result of his injuries. The large finger thereof was

removed by amputation; injuries to the index finger required eight stitches and it was left in such condition as to permit of but a limited use thereof in the future; and the thumb was also left in a weakened condition. Plaintiff was required to remain two weeks in a hospital after the accident, the amputation occurred another four weeks thereafter, and the injuries required further medication for an additional period of three weeks. During all this time the jury could rightfully infer that plaintiff suffered some considerable pain. To illustrate: "Q. Did any complications, so far as you know, set in that caused the amputation of that finger? A. The knuckle was removed down at the doctor's office. Q. What do you mean the knuckle was removed? . . . A. . . . He reached in with a pair of tweezers and pulled the knuckle out of the finger. As he did that the finger dropped off"—and the consequent amputation followed.

The amount of the verdict thus complained of, when balanced and compared against the cumulated effect of the several elements of injury and damage above referred to, fails to produce in our minds that inference of passion and prejudice on the part of the jury which must always be present in such force as to shock the judicial sense of justice before an appellate court is warranted in setting aside the award of a jury, and so we hold that appellant's claim as to the alleged excessiveness of the verdict is without substantial merit.

■ Appellant also urges various and sundry claims of error against instructions given and refused by the trial court. The most vigorously pressed of these claims relate to the alleged failure of certain so-called "formula" instructions to individually contain a recital of all the elements essential to recovery by plaintiff. If these instructions are by a process of dislocation from the general charge, so separated from each other as to then be viewed with over-technical nicety, they would unquestionably be subject to the objections urged by appellant. But the very method of the giving of these so-called "formula" instructions indicates plainly that they were not intended to so operate or to have such effect. They were merely intended in the first instance to advise the jury how their verdict should go in the event the respective matters set forth in the pleadings

were either established or failed of establishment one way or the other. In other words, the instructions were not intended, nor did they purport, to state the several elements essential to a verdict as such in detail, but instead, those matters were made the subject of separate specific instructions; the court's intention being merely to *supply by reference* to the pleadings a statement as to how the verdict of the jury should go in the event plaintiff did or did not establish negligence as charged in his pleading, or in the event he did so establish such negligence, how in such event the verdict should then go if contributory negligence was or was not established. They were not "formula" instructions of the type condemned in *Beyerle* v. *Clift*, 59 Cal. App. 7, 9 [209 Pac. 1015], where the pleaded element of contributory negligence was entirely omitted from an instruction directing a verdict. ■ However, the particular omission in the instructions upon which appellant places the most stress is their serious failure to at any time define or express in direct terms the principle of "proximate cause". This is indeed a most serious omission, and we are not unmindful that in reversing the case of *Long* v. *Barbieri*, 120 Cal. App. 207. [7 Pac. (2d) 1082, 1087], because of certain instructions of a more obviously erroneous character, we indicated the added weight that had been given the errors in question because of the similar failure of the trial court to define "proximate cause", by declaring:

"It should be further noted that the trial court omitted to give any instruction whatsoever defining 'proximate cause', and the jury were thus left to their own varying conceptions, if any, as to what might constitute this always related and ever essential principle of the doctrines of negligence and contributory negligence."

It must therefore be conceded that in failing to directly define and present to the jury for their consideration, the legal principle embraced within the term "proximate cause" the trial court committed an error of no inconsiderable magnitude. Its effect, however, is substantially weakened and mitigated in the present case by and through the effect of the very numerous and detailed instructions given by the court at the request of defendant, in which almost every conceivable element of the multitude of defensive principles of law open to and urged by him were specifically presented

to the jury. These directly set forth the many and numerous circumstances upon which, in the event their existence was established by the evidence, the verdict of the jury must be for defendant, or plaintiff could not recover; and among these in connection with the terms "negligence" or "negligent" the word "proximately" is frequently used.

The jury was also instructed: " . . . where negligence is charged, it devolves upon the person charging it, if he would prevail *as to that charge,* to establish . . . it by a preponderance of evidence." (Italics ours.) The court also, and as a part of its general charge, repeatedly instructed the jury in the utmost detail upon numerous matters that would constitute contributory negligence on the part of plaintiff, and thus defeat recovery. At no time did the appellant now urging the error of its omission tender to the court an instruction defining "proximate cause", or request that qualifying instructions to those of which he complains be given.

The cumulative effect of these considerations leads us to place our determination of the merits of appellant's contention (that the failure of these instructions to define "proximate cause" is reversible error) fairly within the scope of the expression of a similar determination arrived at by our Supreme Court in *Wirthman* v. *Isenstein,* 182 Cal. 108, 110, 111 [187 Pac. 12, 13], where it is declared:

" . . . where, as here, the court instructs that, to entitle respondent to recover, appellants must be guilty of negligence 'as alleged in the complaint', and that respondent himself must be blameless and free from any contributory negligence, it must have been made perfectly clear to the jury that a finding by them that appellants were guilty of the neglience so described, the respondent himself being blameless, would of necessity amount to a finding that such negligence was the proximate cause of the injury. (*Weaver* v. *Carter,* 28 Cal. App. 241 [152 Pac. 323].) Furthermore, the court's instructions, so far as they went, correctly stated the law, and if appellants desired a qualifying instruction to the effect that, to entitle respondent to recover, appellants' negligence must be the proximate cause of the injury, it was incumbent upon their counsel to either ask the court to give such qualifying instruction, which it undoubtedly would have done, or have presented an instruction embodying it.

Having failed to do either, appellants are in no position to complain of the instructions given. (*Weaver* v. *Carter*, *supra; Townsend* v. *Butterfield*, 168 Cal. 564 [143 Pac. 760]; *O'Connor* v. *United Railroads*, 168 Cal. 43 [141 Pac. 809].)''

We have carefully considered all the other claims advanced by appellant with respect to alleged errors of omission or commission in the giving of instructions, and find them to be of a much less serious and inconsequential character, and taken singly and collectively they do not, under section 4½ of article VI of the Constitution, present errors of such sufficient magnitude as would justify a reversal of the judgment.

The judgment is affirmed.

Cashin, J., and Knight, Acting P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 26, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 21, 1932.