[Civ. No. 7724.   Third Dist.   Sept. 25, 1950.]

LYMAN CLARK, Appellant, v. STATE OF CALIFORNIA et al., Respondents.

Clewe, Deahl & McClarrinon for Appellant.

Goldstein, Barceloux & Goldstein for Respondents.

ADAMS, P. J.—Appellant, Lyman Clark, brought this action to recover damages for the death of his wife alleged to be due to the negligence of James F. McClaskey, an engineer for the State Division of Highways, in the operation of a state automobile. Contributory negligence on the part of decedent was alleged by defendants. A jury returned a verdict in favor of defendants and from the judgment which followed this appeal has been taken.

Appellant relies upon asserted error on the part of the trial court in the giving and in the failure to give certain instructions.

When the accident occurred Mrs. Clark was on her way to her home after her day's work in Oroville, and, when struck by respondents' car, had just alighted from a Greyhound bus and was in the act of crossing the highway at a point in front of the entrance to what was designated as "Old Army Barracks," and at the intersection of Harlan Street with the highway. The bus after crossing the entrance to the barracks on the east side of the highway moved forward up a rise. Mrs. Clark then started across the road to the southward, bound for her home which was on the southwest corner of the highway and Harlan Street, which street intersected the highway at a right angle from the south, just opposite the entrance to the barracks. In the meanwhile defendant McClaskey, traveling eastward, topped the rise above the place of the accident. His speed, he said, was then about 45 miles per hour which he reduced to about 40 miles per hour when he saw the bus. His car was dark green in color, and was being operated with parking lights only. The date was October 23, 1947. The time of the accident was in controversy, the testimony varying as to whether it was between 5:45 and 6 p. m., or between 5:30 and 5:45 p. m. Testimony as to visibility was conflicting, but it was generally agreed that it was dusk or twilight, and the bus driver and an investigating patrolman testified that it was dark enough for headlights. McClaskey, though, in an apparent effort to offset his failure to use headlights, said that it was not dark, yet he said that when he first saw decedent about 20 to 25 feet away she appeared only as a "dark object." After being struck Mrs. Clark's body was carried on defendants' car for some distance and her clothing

and personal articles scattered along the road. Defendants' car came to rest about 84 feet from the point of impact, but decedent's body was found eastward therefrom about 19 feet.

Appellant's first assignment of error is the court's failure to give instruction 21 (BAJI 104), which appellant had requested. It reads:

"Negligence is of no consequence unless it was the proximate cause of an injury.

"The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred. It is the efficient cause— the one that necessarily sets in operation the factors that accomplish the injury. It may operate directly or through intermediate agencies or through conditions created by such agencies."

The court refused to give this instruction, indicating that it had been given, though no instruction defining proximate cause is found in the record of those given. It is conceded by respondents that such an instruction is usually given. The term "proximate cause" was used by the trial court in 16 of the instructions given. Failure to define the term was held to be error in *Spear* v. *Leuenberger*, 44 Cal.App.2d 236, 246 [112 P.2d 43], though there were other errors in that case and all the errors were considered, collectively, to constitute ground for reversal. Also in *Brower* v. *Arnstein*, 126 Cal.App. 291, 298-299 [14 P.2d 863], failure to define proximate cause was said to be a "most serious omission," but was not held sufficiently serious to justify a reversal of a judgment for plaintiff, the court saying that defendants had not requested an instruction defining proximate cause, and that it was incumbent upon them to do so. In *Long* v. *Barbieri*, 120 Cal.App. 207, 217-218 [7 P.2d 1082], failure to give what was designated as "this always related and ever essential principle of the doctrines of negligence and contributory negligence" was one of the errors for which the judgment for defendant was reversed.

Here respondents urge that any negligence on the part of decedent must have been the proximate cause of decedent's death and that therefore failure to define proximate cause was harmless. But the instructions on contributory negligence which were given plainly puzzled the jury, for after some consideration they returned to the courtroom for further

instructions, whereupon the foreman said they desired a re-reading of the instructions as to negligence on the part of decedent, saying that the jury seemed to be under the impression that the instructions stated that negligence of the decedent "in even the tiniest little bit, that would go against the plaintiff, they would have to render decision for the defendant." He said further, "I think if there is the least bit of negligence on the part of the plaintiff, if we found there is negligence there of any kind, we would have to find for the defendant." The court then reread several of defendants' requested instructions dealing with what, if found, would constitute negligence on the part of decedent. They are discussed hereinafter. But the omission of any definition of the term "proximate cause" was not supplied. In view of the specific request and of the facts as hereinbefore stated and of the jury's evident concern over the issue of contributory negligence, we think it was error of a serious nature to refuse the requested instruction.

Appellant's second assignment of error is the court's failure to give his requested instruction No. 36 of the Approved Forms of Instruction (BAJI No. 138) which reads:

"A person who, himself, is exercising ordinary care has a right to assume that others, too, will perform their duty under the law, and he has a further right to rely and act on that assumption. Thus it is not negligence for such a person to fail to anticipate injury which can come to him only from a violation of law or duty by another. However, an exception should be noted: the rights just defined do not exist when it is reasonably apparent to one, or in the exercise of ordinary care would be apparent to him, that another is not going to perform his duty. [One is not justified in ignoring obvious danger although it is created by another's misconduct, nor is he ever excused from exercising ordinary care.]"

Respondents' contentions in this case are that regardless of whether or not McClaskey was negligent, the jury was justified in finding that Mrs. Clark was guilty of contributory negligence in these respects, to wit: That she could not have looked up the road prior to reaching the center line for, had she done so, she would have seen the approaching car; that before crossing the highway she did not make the effort of a reasonably prudent person to determine whether it was safe for her to do so; and that had the jury been given the requested instruction it "would not have changed the jury's task with respect to contributory negligence."

We are not in accord with this conclusion. For instance, Mrs. Clark, who is presumed to have taken ordinary care for her own concerns (Code Civ. Proc., § 1963(4)), may have looked up the road prior to reaching the center line, and have failed to see the approaching car because of its failure to use regulation headlights instead of parking lights. The bus driver testified that he was looking continuously up the highway and that he did not see McClaskey's car until it was directly upon him. She might have seen the parking lights of McClaskey's car but because of their dimness been unable to estimate the speed of his car; she might have looked and not have seen the parking lights, and have assumed that any approaching car would carry headlights, and, since none were visible, it was safe for her to cross. One of the purposes of requiring lighted headlights is to warn a pedestrian of a vehicle's approach; and the other is to enable the driver to see the highway ahead of him and thus avoid striking obstacles thereon. In *Sawdey* v. *Producers' Milk Co.*, 107 Cal.App. 467, 475 [290 P. 684], the court said:

"It must be borne in mind that the purpose of lights is two-fold, namely, to enable one to see and to be seen. And in this section the intent of the legislature is manifest. When darkness is of a density to obscure an object 200 feet distant it provides that there must be lights. Obviously, to overcome the darkness existing to the extent of disclosing the presence of the car, which otherwise would not be clearly discernible."

Also see *Mardorf* v. *Penniman*, 68 Cal.App. 696, 698-699 [230 P. 12]; *Tieman* v. *Red Top Cab Co.*, 117 Cal.App. 40, 43 [3 P.2d 381].

In *Robbiano* v. *Bovet*, 218 Cal. 589, 596-597 [24 P.2d 466], it was said that plaintiff had the right to presume that those using the highway in front of him were obeying the law and were performing their duty in having their machines properly equipped with headlights. From all the evidence as to the amount of light there was, including the specific testimony of McClaskey that at 25 feet decedent appeared to him as just a dark object, the jury may have felt that it was dark enough to have made headlights imperative. Had the requested instruction been given they might further have believed decedent had a right to assume and did assume that no car was coming because no headlights were visible, and that, so rightfully assuming, she went forward to her death.

The burden of proof to show contributory negligence on the

part of Mrs. Clark was upon defendants, and we think that plaintiff was entitled to have this requested instruction given to be weighed against the foregoing assumptions upon which respondents rely. There is nothing to show negligence on decedent's part as matter of law. (See *Dickinson* v. *Pacific Greyhound Lines,* 55 Cal.App.2d 824, 827 [131 P.2d 401].) The refusal of the instruction was, we think, under the facts of this case, error of grave import.

Appellant's third assignment of error is that the court failed to give his requested instructions defining negligence and ordinary care. He proposed instructions 18 and 20 of the Approved Forms (BAJI 101-A and 102-A), the former defining negligence, and the latter adding to the definition given in BAJI 101 the fact that it is a relative term. The court gave BAJI instructions Nos. 101 and 101-B, the basic definition of negligence, and the elaboration thereof; and while 101-A, and 102-A, might well have been given we do not consider failure to give them as serious error.

The fourth assigned error is the court's refusal to give any of plaintiff's requested instructions on right of way, to wit: BAJI 150, 160-A, and 150-B. The court gave an instruction on section 560 of the Vehicle Code, to the effect that the driver of a vehicle shall yield the right of way to a pedestrian crossing the roadway within any unmarked crosswalk at an intersection, and followed that by an instruction defining "roadway," "crosswalk" and "intersection," adding that conduct in violation of section 560 constitutes negligence *per se,* but also adding that such a presumption is not conclusive. The instructions which plaintiff requested on this subject matter are concerned mainly with a description and a definition of what is meant by the phrase "right of way." They might properly have been given, but we do not think that the failure to give them, standing alone, would be sufficient to constitute substantial error, since the instructions as a whole sufficiently took care of the question of right of way as presented by the evidence in the case.

Appellant further contends that the court committed error in giving at defendants' request the following instruction:

"In determining whether or not Susie Mae Clark, the deceased, was guilty of contributory negligence, you must measure her acts and conduct by the standard of the average person of her age and intelligence as the same are shown by

the evidence in this case. If you believe from the evidence that she was guilty of the slightest degree of negligence, measured by that standard, and that such negligence proximately contributed to the accident and her death, the plaintiff is not entitled to a verdict and your verdict must be for the defendants.''

First, appellant complains that this instruction sets up as the standard of care to be applied by the jury ''the standard of the average person of her age and intelligence.'' From a critical point of view the criticism is sound, but we do not think in view of other instructions correctly stating the standard of care that any harm came from this part of the instruction. But appellant more justly complains of a group of instructions given by the court at defendants' request which as to the point now under consideration may be summarized as follows: The court told the jury that if the decedent was guilty of contributory negligence, no matter how slight, which proximately contributed to the accident their verdict must be for the defendants. Again the court said that in determining whether or not decedent was guilty of contributory negligence ''if you believe from the evidence that she was guilty of the slightest degree of negligence . . . and that such negligence proximately contributed to the accident and her death'' the verdict must be for the defendants. As said by the Supreme Court of California in *Strong* v. *Sacramento & P. R. R. Co.,* 61 Cal. 326, 328:

''The rule is, not that any degree of negligence, however slight, which directly concurs in producing the injury will prevent a recovery; but, if the negligence of the plaintiff, amounting to the absence of ordinary care, shall contribute proximately, in any degree, to the injury, the plaintiff shall not recover.''

Ordinarily we would not be disposed to attach great importance to this defect in the instructions, but there is, in the record here, matter which we have hereinbefore referred to, indicating that the defect may have wrongfully damaged plaintiff's case. We refer to what has been hereinbefore said concerning the situation presented when the jury returned to the court for further instructions, particularly on the matter of contributory negligence. What the foreman said to the court at that time amounted in substance to a statement that the jury were discussing the question of decedent's negligence exactly in the light of the court's erroneous statement. The

foreman said: "We would like to have a re-reading of your instructions as it pertains to any negligence on the part of the plaintiff. They seem to be under the impression that your instructions are that negligence in even the tiniest little bit, that would go against the plaintiff, they would have to render decision for the defendant." The court replied: "It is not quite clear, is it?" And the foreman answered: "I think if there is the least bit of negligence on the part of the plaintiff, if we found there is negligence there of any kind, we would have to find for the defendant." The court then, among other instructions, reread to the jury the same faulty instructions we are now considering, which were repetitious and tended to over-emphasize the obligations of decedent, without stating the reciprocal duties of the defendant driver. As was said in *Taha* v. *Finegold,* 81 Cal.App.2d 536, 544-545 [184 P.2d 533], the stress placed upon the duties of the pedestrian in this case may well have been the deciding factor in the minds of the jurors.

While the lawyer and also the layman recognize that there are differing degrees of negligence, here ordinary negligence was the only degree of negligence involved, and to permit the jury to continue in their mistaken belief that they were concerned with the degree of negligence as distinguished from the degree of proximate contribution of that negligence to the happening of the accident and the infliction of the injury, was detrimental to plaintiff's interests, to say the least.

Appellant urges that errors were committed other than the foregoing, but as we consider those above discussed as sufficient to justify reversal, other suggested errors need not be considered.

The judgment appealed from is reversed and a new trial as to all issues is ordered.

Peek, J., and Van Dyke, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied November 20, 1950.