[Civ. No. 8952. Third Dist. June 3, 1957.]

HARVEY R. MONTIETH, a Minor, etc., et al., Appellants, v. THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY (a Corporation) et al., Respondents.

444

[REDACTED]

C. Ray Robinson, William B. Boone and William W. Coshow for Appellants.

Robert W. Walker, William F. Brooks, Rutherford, Jacobs, Cavalero & Dietrich, D. R. Jacobs, Stephen Dietrich, and Jacobs, Cavalero & Dietrich for Respondents.

SCHOTTKY, J.—This is an appeal from a judgment for defendants in a main line railroad crossing accident case, after verdict by the jury in favor of respondents, and following the denial of plaintiffs' motion for a new trial.

The appellants are Harvey R. Montieth, the bus driver involved in the collision who sued for alleged personal injuries, and Artia Markham, his mother, who sued to recover medical expenses. For convenience, they will hereafter collectively be referred to as appellants, and Harvey Montieth will generally be referred to as appellant bus driver. The respondents are The Atchison, Topeka and Santa Fe Railway. Company and four members of its train crew, i.e., William T. Scott (engineer), Leonard Lathem (fireman), Orville D. Brumfield (brakeman), and Frank E. Cross (conductor). For convenience they will hereafter collectively be referred to as respondents, and the railroad company will generally be referred to as respondent railroad company.

The action was brought by appellants to recover damages from the respondents for the alleged negligence of respondent railroad company and its train crew in the operation of a freight train which collided with a school bus driven by appellant bus driver at the Hatch Road main line crossing in Stanislaus County. No negligence was pleaded as to the

maintenance of the crossing. Respondents denied the charge of negligence and pleaded contributory negligence as an affirmative defense.

Appellants do not question the sufficiency of the evidence to support the judgment but contend most earnestly that the court committed prejudicial error in its instructions to the jury. Before discussing these contentions we shall give a brief summary of the evidence as disclosed by the record.

The accident occurred at about 7 or 7:05 a. m. on February 23, 1954, at the point where Hatch Road crosses the Santa Fe railroad tracks between Empire and Hughson in Stanislaus County. The crossing is about two miles south of Empire and about one mile north of Hughson.

The collision was between a freight train owned and operated by Santa Fe and a school bus owned by the Modesto Union Academy and operated by the plaintiff Harvey Montieth, an able-bodied young man of 19 years. The bus was a 1949 International, it was painted orange-yellow with black letters, and was about 35 feet long. It had a door on the right side at the front and none on the left side.

The Santa Fe locomotive was a double unit Diesel-electric. It was pulling 56 cars and a caboose; 47 cars were loaded. The locomotive was orange and black. It was equipped with a pneumatic bell and whistle.

There is a single set of railroad tracks running generally north and south, while Hatch Road runs generally east and west. There is a railroad bridge over the Tuolumne River to the north of Hatch Road. The tracks make a slight bend to the southeast after crossing the bridge at a point about a mile north of the Hatch Road crossing. Thereafter, the tracks run substantially straight and substantially level to Hatch Road. There is a very slight upgrade at that point, consisting of about 15.8 feet to the mile, or about one-third of one per cent. A whistle board and station sign are located at the side of the tracks about 2,000 or 2,306.5 feet north of Hatch Road. The tracks come into the Hatch Road crossing at a slight southeasterly angle.

Hatch Road is a two-lane highway with a white line down the middle. There is also a white line across the road parallel to the tracks and about 10 to 12 feet west of the nearest track. There is no stop sign at the crossing on the west side; there is such a sign at the intersection of Santa Fe Road and Hatch Road just east of the Hatch Road crossing. Santa Fe Road runs parallel to the tracks for some distance. There were no auto-

matic wigwag signals, crossing gates, or flagmen at the crossing. There is an irrigation canal about 75 feet wide running along Hatch Road just to the south of it. A railroad bridge carries the tracks across the canal just south of the crossing.

At the time of the accident there was a fog which covered the crossing and a considerable area surrounding it. The fog was variously described as heavy, thick or dense. There were five Santa Fe employees riding on the train. This crew consisted of Scott, the engineer, who was riding on the right side of the locomotive cab, Lathem, the fireman, riding on the left side of the cab, Brumfield, the head brakeman, riding in the cab between the engineer and fireman, Cross, the conductor, riding in the caboose on the right side, and Diehl, the rear brakeman, riding in the caboose on the left side. All except Diehl were made defendants in the action.

The train started from Richmond but the five-man crew listed above took over the train at Riverbank the morning of the accident. Riverbank was about 11 miles or 8 miles or 9 miles north of the scene of the accident. The train left Riverbank at 6:50 a. m. and was on its way south to Calwa, which is the terminal yard just south of Fresno. It was an unscheduled or extra freight and there were no orders for any stops anywhere along the way.

Plaintiff Harvey Montieth testified that he drove to the school (Modesto Union Academy) and picked up the bus. The school is on Hatch Road about four miles west of the scene of the accident. He drove away from the school with the bus at about 6:45 a. m. He was alone in the bus and was on his way to pick up students. It was very foggy and visibility was limited to about 50 to 75 feet. The plaintiff turned on his headlights before starting and they were left on at all times. He drove east on Hatch Road and stopped at the railroad crossing; he stopped the bus about 20 feet west of the tracks; the right wheels of the bus were about two feet off on the shoulder of the road. It was then about 6:55 a. m. After stopping, Harvey got out of the bus and walked about three or four feet in front of it and looked up and down the tracks. He also listened. He did not see or hear anything; there was no train whistle or bell or noise of a train and he did not see any train light.

After looking and listening, the plaintiff walked back to get into the bus; just as he reached the right fender of the bus a car passed going east. He had previously noticed the car stopped behind him. There were two men in the car;

the passenger looked out the window as they went by. Then the plaintiff went back around to the front of the bus and wiped off a little piece of the windshield which the wiper did not reach. Thereupon, he went back up and listened for a train again and looked; there was no train bell, whistle, light or sound. He got back in the bus, threw his rag in the glove box or on the floor, saw another car stopped behind the bus, and then sat down. The car was stopped about 5 or 8 feet behind the bus, in the middle of the right lane.

The plaintiff sat down in the driver's seat, leaned forward and looked to his left down the tracks, then looked to the right; there was neither sight nor sound of a train. About the time he looked to his right (south) he started out in low gear and proceeded across the tracks. As he drove forward there was no train whistle, bell or noise and he saw no train light. The bus remained in low gear and was going about 5 to 8 miles per hour at the time of the accident.

The door on the right side of the bus was open and the vent window on the left side was open.

Just before the train struck the bus the plaintiff saw a black shadow to his left. It was just for a split second.

The bus was stopped at the crossing for a period of about two or two and a half minutes altogether. It was a few seconds later that the bus started to move over the tracks.

Four witnesses, Streng, Darnaby, Porter and Smith, testified that plaintiff stopped at the crossing. Two of the witnesses, Streng and Darnaby, corroborated the fact that plaintiff got out of the bus and looked and listened. There were no other eyewitnesses to the accident or to plaintiff's conduct immediately before it happened. These four witnesses and two others testified that they did not hear any train whistles prior to the accident.

The five members of the train crew and four other witnesses testified to hearing the blowing of the train whistles prior to the accident. Scott, the engineer, was not present at the trial, but his deposition was admitted and read in evidence. He testified that there was a whistle board and station sign along the tracks approximately 2,000 feet north of Hatch Road and that that was the place where he last sounded the whistle before the collision. He gave a station whistle and then a regular crossing signal. The signals were continuous, one right after the other. He completed the crossing signal about ten seconds before reaching the Hatch Road crossing. Scott also testified that the bell was ringing continuously

from Riverbank to the scene of the accident. After the accident Scott sounded a flag signal on the whistle—a signal to put out a flag to protect the rear of the train. That was after the train came to a stop.

The fireman, Lathem, testified that he could not hear the bell ringing from inside the locomotive cab, but he could hear the sound of the whistle; it was very loud. He also testified that the engineer sounded a station signal and then a crossing whistle before the accident. He estimated that the whistle was blown about 2,000 feet north of the crossing. He determined that distance on the basis that there was a whistle post about 2,000 feet north of the crossing. The whistle post was on the engineer's side of the track and the fireman, Lathem, could not see it. Lathem further testified that the whistle was completed "just a second or so" before the collision; that it could not have been as long as 10 seconds, as the engineer testified, although the engineer was the one who blew the whistle. In his deposition, Lathem testified that the whistle was completed about three or four seconds before the train reached Hatch Road. Immediately after the train came to a stop following the collision another whistle was blown.

The testimony of the head brakeman, Brumfield, was practically identical with that of the fireman, Lathem.

The witness Porter testified that he was right in back of the bus and saw the accident. He was driving east on Hatch Road; when he reached the crossing he saw the bus stopped there; Porter stopped his car about two to four feet behind the bus. The bus was over to the right a little. He saw the bus driver standing in the bus, in front of it, about in the middle. The bus driver sat down, was there for a few seconds, and then started the bus forward. When the bus started up, Porter also drove forward and was following right in back of the bus, about 2 to 4 feet behind it. The train then hit the bus. There was another car behind Porter.

Porter also testified that when the bus started up it was about 7 o'clock. The bus stopped there about two to four minutes. There was no train whistle or bell before the accident. After the train hit the bus and was going down the track there was a loud train whistle. It was a Diesel engine and did not make much noise. It was very foggy that morning and visibility was between 50 and 75 feet.

Porter also testified that he saw the headlight of the train when the train was about 15 or 20 feet from the bus. He

also stated that he saw the train's light for about four seconds before the collision, but he later said that the four seconds also included the time he watched the train go down the tracks after the impact. The bus was on the tracks when Porter first saw the train.

The plaintiff Harvey Montieth testified that he saw a black shadow to his left a split second before the impact.

The engineer, Scott, stated that he saw the bus when the train was about 100 feet away. At that time the bus was "dead center in the track."

The fireman, Lathem, first saw the bus in the middle of the track, straddling it when the train was about 70 to 100 feet from it. The center of the bus was between the rails.

The bus was about 35 feet long.

All the witnesses agreed that the train hit the bus near the rear of it. Smith testified that the bus was "pretty near across the track when the train hit it." The plaintiff stated that the train hit the left side of the bus around the rear wheels. Scott's testimony was that the train hit the left rear wheel of the bus. Brumfield testified that the bus was struck just in front of the rear wheels. Lathem ducked down and did not see the actual impact.

Porter estimated the speed of the train at 80 miles per hour when he saw it. However, the defendants Scott, Cross and Lathem estimated the train's speed at 45 to 50 miles per hour. The rear brakeman, Diehl, stated that the speed of the train was about 45 miles an hour. Defendants also produced a copy of a speed tape which showed a speed of 47.5 miles per hour when the train went into emergency.

 Appellants first contend that the court committed prejudicial error in giving defendants' instruction Number 14, which reads as follows:

"There is no doctrine of comparative negligence in this State. It is the law that if the plaintiffs were guilty of the slightest amount of negligence proximately contributing to the accident, there can be no recovery and this is true regardless of how slight such negligence on his part may have been and it is also true regardless of whether the defendant railway company or its employees were negligent or how negligent they may have been. The law does not permit you to weigh the amount of negligence as between the plaintiffs and the defendants; that is to say, the law is not concerned with how negligent either party may have been, if both parties were

negligent, and such negligence proximately contributed to the accident. Or stated another way, any negligence of the plaintiffs cannot be excused on the ground that the defendants were also negligent or on the ground that the defendants may have been more negligent than the plaintiff.

"If you find from the evidence that the plaintiffs were guilty of the slightest amount or degree of negligence which proximately contributed to the accident in question, they are not entitled to recover any damages, and your verdict must be for the defendants, Santa Fe Railway Company, William T. Scott, L. R. Lathem, Orville D. Brumfield, and Frank E. Cross.''

Appellants argue that: ''Thus, with unnecessary and argumentative repetition and emphasis, the instruction erroneously told the jury, in effect, that the plaintiffs were precluded from recovering and the verdict must be for defendants if the plaintiffs failed to use great care and were guilty of the slightest amount or degree of negligence.'' In support of this contention appellants quote the following from the early case of *Robinson* v. *Western Pac. R. R. Co.*, 48 Cal. 409, at page 422:

''. . . It is no defense to an action of this kind that the plaintiff by his own act has contributed to his injury; it must appear that by his own fault he has so contributed. And the law regards the plaintiff as innocent, unless he has been guilty of what has been called (somewhat awkwardly) 'ordinary negligence;' that is, unless the evidence shows a want of ordinary care and prudence on his part. His failure to take great care is no defense. (Shearman and Redfield, § 29.) The *formula* is, not that any degree of negligence on the part of the plaintiff which directly concurs in producing the injury (however slight) will constitute a defense; but if the negligence of the plaintiff, which amounts to the absence of ordinary care, shall contribute, in any degree, proximately to the injury, the plaintiff shall not recover. A very timid or cautious person would not perhaps have gone on the track as the plaintiff did, and—as the absence of great care is slight negligence—it may be claimed that, to that extent, the plaintiff was negligent.''

They also quote from *Strong* v. *Sacramento & P. R. R. Co.*, 61 Cal. 326, at page 328, as follows:

''. . . Plaintiff had a right to rely upon the performance by those on the locomotive of every act imposed by law upon them when approaching a crossing. In the legal sense, he

was innocent of negligence, unless there was a want of ordinary care and prudence on his part. The rule is, not that any degree of negligence, however slight, which directly concurs in producing the injury will prevent a recovery; but, if the negligence of the plaintiff, amounting to the absence of ordinary care, shall contribute proximately, in any degree, to the injury, the plaintiff shall not recover. [Citing the Robinson case.]

"A very timid or cautious person would not, perhaps, have driven in the direction of the railroad, knowing that a train *might* pass along the track, and that the warning bell might not be sounded. But the question is: Did the plaintiff exercise ordinary care and prudence in doing what he did?"

Appellants also cite *Clark* v. *State,* 99 Cal.App.2d 616. It was there said at page 623 [222 P.2d 300]:

". . . But appellant more justly complains of a group of instructions given by the court at defendants' request which as to the point now under consideration may be summarized as follows: The court told the jury that if the decedent was guilty of contributory negligence, no matter how slight, which proximately contributed to the accident their verdict must be for the defendants. Again the court said that in determining whether or not decedent was guilty of contributory negligence 'if you believe from the evidence that she was guilty of the slightest degree of negligence . . . and that such negligence proximately contributed to the accident and her death' the verdict must be for the defendants. As said by the Supreme Court of California in *Strong* v. *Sacramento & P. R. R. Co.,* 61 Cal. 326, 328:

" 'The rule is, not that any degree of negligence, however slight, which directly concurs in producing the injury will prevent a recovery; but, if the negligence of the plaintiff, amounting to the absence of ordinary care, shall contribute proximately, in any degree, to the injury, the plaintiff shall not recover.'

"Ordinarily we would not be disposed to attach great importance to this defect in the instructions, but there is . . . matter . . . indicating that the defect may have wrongfully damaged plaintiff's case. We refer to what has been hereinbefore said concerning the situation presented when the jury returned to the court for further instructions, particularly on the matter of contributory negligence. What the foreman said to the court at that time amounted in substance to a statement that the jury were discussing the question of dece-

dent's negligence exactly in the light of the court's erroneous statement.''

And further, at page 624:

''While the lawyer and also the layman recognize that there are differing degrees of negligence, here ordinary negligence was the only degree of negligence involved, and to permit the jury to continue in their mistaken belief that they were concerned with the degree of negligence as distinguished from the degree of proximate contribution of that negligence to the happening of the accident and the infliction of the injury, was detrimental to plaintiff's interests, to say the least.''

Appellants then argue that the giving of said instruction was particularly harmful to appellants' case because throughout the voir dire examination of jurors counsel for defendants, in their questioning of jurors, repeatedly argued the legal theory stated in said instruction.

Respondents in reply argue (1) that the giving of such an instruction is not in and of itself any error whatsoever, and (2) that although such instruction might be subject to some technical criticism in not being nicely worded, nevertheless, the giving of the same or similar instructions is never considered to be prejudicial error, unless, in addition thereto, the giving or refusal of instructions on other issues has been prejudicially erroneous and it affirmatively appears that the jury was in fact misled.

Notwithstanding the earnest and able argument of appellants we cannot agree that the giving of said instruction constituted prejudicial error. ■ For as stated in *Popejoy* v. *Hannon*, 37 Cal.2d 159, at page 168 [231 P.2d 484] :

''Prejudicial error does not necessarily result from the giving of an instruction which, subjected to meticulous analysis, might be given a 'possible construction' making it subject to 'criticism.' It is extremely doubtful that the jurors analyzed the instruction with such exactitude as counsel for the Hannons.''

■ And as stated in *Westover* v. *City of Los Angeles*, 20 Cal.2d 635, at page 637 [128 P.2d 350] :

''. . . In this connection it should be remembered that the charge to the jury must be read in its entirety, each instruction being considered in connection with the others. If they harmonize as a whole and fairly and accurately state the law, a reversal may not be had because of verbal inaccuracies, or because a separate instruction does not contain all of the ele-

ments which are to be gathered from the instructions as a whole. [Citing cases.]''

Preceding the instruction complained of the court defined negligence as the failure to use ordinary care in the management of one's person or property and also defined ordinary care. Immediately preceding the instruction complained of the court defined contributory negligence as follows:

''One who is guilty of contributory negligence may not recover from another for the injury suffered. The reason for this rule of law is not that the fault of one justifies the fault of another, but simply that there can be no apportionment of blame and damages among the participating agents of causation.''

Immediately following the instruction No. 14 complained of the court gave the following instructions:

''You are instructed that if you find that the plaintiff, Harvey R. Montieth, was negligent and if you further find that his negligence was the sole proximate cause of the accident, plaintiffs are not entitled to recover against the defendants and your verdict should be for the defendants.''

''To establish the defense of contributory negligence, the burden is upon the defendant, Santa Fe Railway Company, to prove by a preponderance of the evidence that the plaintiff, Harvey Monteith, was negligent and that such negligence contributed as a proximate cause of the injury. If you find that such facts have not been proved by a preponderance of the evidence, then your decision on the issue of contributory negligence must be in favor of the plaintiff, Harvey Monteith. If you find that it is just as probable that the plaintiff, Harvey Monteith, was free from negligence, or even if negligent, that it is just as probable that his negligence did not contribute as a proximate cause of the injury, as it is that negligence on the part of the plaintiff, Harvey Monteith, did contribute as a proximate cause, then the defense of contributory negligence has not been established.''

''The defense of contributory negligence requires proof of two things: First, that the plaintiff was negligent at the time and place of the accident, and, secondly, that any such negligence was a proximate cause of the accident. Negligence on the part of a plaintiff is of no significance and does not bar a recovery by the plaintiff unless the negligence, if any, was so connected with the accident as to constitute a proximate cause thereof. If you should find that the plaintiff, Harvey Monteith, was negligent, still such negligence, if any, does not

bar his recovery and is of no significance unless you should also find from a preponderance of the evidence that any such negligence was so connected with the accident as to constitute a proximate cause of the accident.''

The evidence in the instant case was highly conflicting but the chief question of fact that confronted the jury was whether or not the train whistle was blown prior to the accident. The record shows that the jury deliberated about an hour before returning a unanimous verdict in favor of respondents. We are convinced that the jury reached the conclusion that the proper warnings were given by the train crew and that appellant Montieth failed to take the proper precautions. We are convinced also that the jury was fully, fairly and correctly instructed as to law relating to negligence, contributory negligence and proximate cause and that even if, in a strict, technical sense, the instruction complained of by appellant is subject to the criticism made of it by appellants, we would not be justified in holding that the giving of said instruction constituted prejudicial error. If said instruction were the only instruction given on the subject of contributory negligence there would be more merit in appellants' contention, but as stated in *Westover* v. *City of Los Angeles, supra,* ''the charge to the jury must be read in its entirety, each instruction being considered in connection with the others.''

Appellants next complain that the court erred in giving instructions ''which were not based upon or supported by any evidence in this case.'' Appellants group these instructions as follows:

''A duty rested upon the driver of the school bus to use ordinary care to look and to avoid colliding with visible objects in front of him, and a special duty of care rested upon him in approaching and crossing this railroad track, which was in itself a warning of danger, and with the presence and location of which he was familiar.'' (Defendants' No. 51.)

''If you believe from the evidence that upon approaching the tracks before the collision with the train, the driver of the school bus could by the exercise of ordinary care have known of the presence of the train upon the crossing and the danger to be apprehended therefrom, but that he carelessly and negligently disregarded such danger and proceeded upon the tracks, such conduct on the part of the driver of the school bus would constitute negligence and if such negligence was the sole proximate cause of the accident, or proximately contributed thereto, then there can be no recovery by the

plaintiffs and your verdict should be for the defendants.''
(Defendants' No. 59.)

"If, from the physical facts in this case, you believe that Harvey R. Montieth, the driver of the school bus, would have had a clear and unobstructed view of the approaching train while he was in a place of safety, you are at liberty to find either that he did not look for a train before driving into a zone of danger or that he looked in a careless manner or that he looked and saw the train and failed to heed the obvious danger.'' (Defendants' No. 52.)

". . . The duty of a person about to cross a railroad track is not satisfied by merely listening, but requires him to use ordinary care to look 'and listen before' passing from a place of safety to a place of danger, in order to become aware of 'a train's' approach, and his failure in this respect, if any, would be negligence on his part, and if such negligence contributed proximately to cause the accident, there can be no recovery for his injury, and your verdict should be for the defendants.'' (Defendants' No. 41.)

". . . Absentmindedness or forgetfulness will not suffice as an excuse for the negligence of a person about to cross a railroad track like the one in this case, even though he be apparently in a condition of mental abstraction and consequently indifferent to the peril of his situation and if you find that the driver of the automobile was negligent in these respects and this negligence was (a contributing) or (the sole proximate) cause of the accident and alleged injuries, then the plaintiff is not entitled to recover against the defendant.'' (Defendants' No. 28.)

"It is the duty of the driver of an automobile to approach railroad tracks at a crossing in such a manner and at such a speed as to be able to control the movements of his automobile and stop the same in the event it should appear to be dangerous to attempt to cross the tracks; in other words, there is a duty on the driver approaching a railroad track to keep his vehicle so under control that if, upon exercising his duty of looking and listening, due care for his safety would require him to stop under the circumstances, he will be able to stop.'' (Defendants' No. 55.)

So far as the contents of these instructions are concerned we do not believe that it can be held that they are inapplicable or are without any support in the record. We do believe, however, that they are properly subject to the criticism that they are in the main argumentative and are the type of

formula instructions that should not be given. ■ We believe that a court should instruct the jury in clear, concise language as to the law applicable to the case, and should leave the matter of argument to counsel for the respective parties. ■ The giving of formula instructions has been condemned many times by our appellate courts but has seldom been made a ground for reversal.

In the case of *Taha* v. *Finegold*, 81 Cal.App.2d 536, the court said at page 543 [184 P.2d 533]:

"Formula instructions should not be given. As said in *Tice* v. *Pacific Elec. Ry. Co.*, 36 Cal.App.2d 66, 71 [96 P.2d 1022, 97 P.2d 844], formula instructions 'are not calculated best to serve most successfully the administration of justice. Their final disappearance will improve the conduct of court trials.' While the giving of formula instructions is not in itself prejudicial error, the giving of them here, added to the other circumstances of the case, combined to deny the plaintiff a fair trial."

■ However, in view of the evidence in the instant case, we do not believe that appellants were prejudiced by the giving of said instructions. The crossing was an open main line crossing with which appellant Montieth was familiar and he knew that he was approaching and crossing said main line railroad in a heavy fog. As hereinbefore stated, the chief issue of fact was whether or not the train whistle was blown prior to the accident. The jury undoubtedly reached the conclusion that proper warnings were given by the train or they would not have rendered a verdict adverse to appellants. We therefore conclude that while said formula instructions should not have been given, it was not reversible error to give them.

■ The next error complained of by appellants is that the court "gave three separate, emphatic and specific instructions to the effect that the plaintiff had no right to rely upon the absence of train signals, implying that plaintiff would be negligent if he failed to anticipate that the defendants would not sound the signals required by law and by their own rules." These instructions were:

"Even if you believe that no whistle was blown and no bell was rung or no other warning was given of the approach of the train, I charge you that the driver of the school bus had no right to rely upon the absence of warning of the approach of the train, and in such reliance, omit the exercise of the care which the law requires of one about to cross a railroad track. . . ."

". . . (No failure of duty or of the customary practice on the part of those in charge of a train or of anyone handling or supervising any phase of its operation, such as a failure to sound the bell, siren or whistle as required by law absolves a person going upon a track area, such as that involved in this case, from the duty to use ordinary care for his own protection.)"

"You are instructed that when a person driving a school bus approaches a railroad track, he is presumed to know that he goes to a place where he may be injured or killed. . . . If he relies upon not seeing or hearing the train or any signal and takes no further precautions he does so at his own risk. . . ."

Appellants argue that these instructions must have conveyed the impression to the jury that the court believed that the plaintiff did rely upon the absence of signals and, in such reliance, took no further precautions and did not stop, look and listen, as he and the other witnesses testified; and that the plaintiff was required to anticipate the negligence of defendants in failing to sound any warning of the approach of the train.

We do not agree with appellants' criticism of these instructions. We believe that they left the question of appellant bus driver's negligence to the jury and must be considered along with the many other instructions given by the court defining burden of proof, proximate cause, negligence and contributory negligence, many of which specifically related to the duties of respondents in giving proper bell and whistle signals, others which specifically related to the duties of respondents in operating the train and maintaining the crossing, and three instructions specifically related to excusing any negligence of appellant bus driver, "unless such negligence was so connected with the accident as to constitute a proximate cause of the accident."

■ Appellants next contend that it was prejudicial error to instruct that failure to hear a whistle was not evidence that one was not sounded. The specific instruction (Defendants' No. 44) complained of by appellants reads as follows:

"Under the statute which deals with sounding of whistle or bell by a steam locomotive 'it is the sounding or giving of the' warning and not the hearing of it which determines the question of statutory violation. On 'the question of violation of the statute' the only issue is whether a signal, as required by the statute, was sounded. If you find that a signal was

sounded as required by the statute, the fact that it may not have been heard by some person, is not ground for finding that the statute was violated, or that the railroad or its employees were negligent 'for that reason alone.' "

Said instruction is not fairly subject to appellants' criticism of it because it does not state or imply that any negative evidence was not evidence on the issue of whether the whistle was blown, but specifically states that if the jury found that a signal was in fact sounded, the fact that it may not have been heard by some person was not ground for finding that the statute had been violated.

Appellants state that a similar instruction was held to be improper in *Jones* v. *Southern Pac. Co.*, 74 Cal.App. 10, 42 [239 P. 429]. However, in that case the instruction which this court held had been properly refused stated that "the affirmative evidence of the fact that the whistle was blown and that the bell was rung should overcome the negative evidence that the whistle was not blown and that the bell was not rung."

█ Appellants contend also that the court committed prejudicial error in giving "special emphasis to the testimony of defendants and other Santa Fe employees." They complain of the following instruction:

"You should apply the same tests to testimony given by employees of the Railroad Company as you would to any other witness sworn in the case. It sometimes becomes necessary for a litigant to rely almost entirely on the testimony of its own employees, and it should not be prejudiced by this fact. The employees of a party litigant are entitled to have testimony given by them scrutinized and evaluated by the identical tests that would be applied to any other witness sworn in the case."

While the instruction was perhaps unnecessary and could well have been omitted, we do not believe that it was an incorrect statement of the law or that giving it constituted error.

The final contention of appellants is that the court erred in over-emphasizing the duties of the plaintiff. It is true that the court gave a number of formula instructions which we believe should not have been given. We have hereinbefore referred to some of these instructions and have stated our belief that argumentative and formula instructions should not be given, but that the court should instruct the jury in clear, concise language as to the law applicable to the case and

leave the matter of argument to counsel for the respective parties. We have read all of the instructions carefully and do not believe that appellants were prejudiced thereby.

No other points raised require discussion.

Because of the numerous contentions of error we have made a careful study of entire record in the instant case. No question is raised as to the sufficiency of the evidence to support the judgment, and we are convinced that the case was one that was decided by the jury upon the evidence presented before them and that there were no errors that would justify a reversal of the judgment. We believe that the following quotation from our opinion in *Risley* v. *Lenwell*, 129 Cal.App. 2d 608, at page 660 [277 P.2d 897], is quite applicable to the instant case:

"Section 4½ of article VI of our state Constitution reads as follows:

" 'No judgment shall be set aside, or new trial granted, in any case, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.'

"The instant case was tried by able and experienced counsel and was presided over by an able trial judge who after full hearing denied appellants' motions for a new trial. Taking the record as a whole, and bearing in mind the plain and meaningful words of the Constitution hereinbefore quoted, we are satisfied that even if appellants are correct in some of their contentions of error, no miscarriage of justice has resulted."

The judgment is affirmed.

Van Dyke, P. J., and Warne, J. pro tem.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 31, 1957. Carter, J., was of the opinion that the petition should be granted.

---

*Assigned by Chairman of Judicial Council.